AYRES, Judge.
This action in tort arose as a result of a fall sustained by plaintiff about 10:00 p. m. on August 24, 1961, as he walked westerly on a sidewalk on the south side of Jordan Street in the City of Shreveport. Plaintiff seeks to recover damages for personal injuries received in the fall, oc *327 casioned by a dangerous and defective condition in the sidewalk.
Made defendants in addition to the City of Shreveport are Sherman L. Gorton, owner of the abutting property, and his insurer, and Gorton’s lessee, Quality Roofing & Sheet Metal Works, Inc., and its insurer. The City of Shreveport is charged with negligence in failing to repair and maintain the sidewalk in good condition ; Gorton, in driving heavy trucks over the sidewalk, resulting in its destruction; and Quality Roofing & Sheet Metal Works, Inc., in similarly contributing to the deterioration of the sidewalk. The defenses urged consist of defendants’ general denial of fault and of pleas of plaintiff’s contributory negligence.
The City of Shreveport sought judgment over against Gorton and Quality Roofing & Sheet Metal Works, Inc., and their insurers because of the condition of the sidewalk allegedly created by them in any sum for which it might be condemned unto plaintiff. Gorton and his insurer likewise sought a judgment over against Quality Roofing & Sheet Metal Works, Inc., and its surety for the amount of any liability which might be imposed on them based on the terms of a lease agreement between them.
In a judgment against the City of Shreveport, Sherman L. Gorton, and Zurich Insurance Company, in solido, plaintiff was awarded, for medical expenses, $316.33; loss of income, $560.00; future medical expenses, $1,000.00; personal injuries, pain, and suffering, $5,000.00; or a total of $6,-876.33. Plaintiff’s demands against Quality Roofing & Sheet Metal Works, Inc., and its insurer, Employers Fire Insurance Company, were rejected. Other than these two latter defendants, all parties have appealed.
In reviewing the facts, the trial court correctly and appropriately observed from the record :
“There can be no doubt that the sidewalk was in a defective condition and was dangerous' to unsuspecting members of the public using it The photographs of the area introduced in evidence clearly show that it had been almost completely obliterated at the point adjacent to the property of Gorton. They also reveal large holes and pieces of broken concrete strewn along the route. There were no lights near this location. The defendant, Gorton, had been carrying on the same business here from 1936 until his lease to Quality in 1958. He admitted that several trucks used in his business had crossed the sidewalk daily either to enter the parking area or to back up to a loading ramp. He also admitted that the destruction had taken place during the time that he operated his business here. The sidewalk along the street is nowhere so extensively damaged as it is in front of Gorton’s premises. Mr. Gorton testified that the sidewalk had been in this condition for years before the plaintiff’s accident on August 24, 1961.
“From these facts the Court must find that the sidewalk had been in a dangerous and defective condition, and for a period of many years; and that the City of Shreveport had either actual or constructive notice of that condition. Its failure to repair it under these circumstances renders the City negligent and .liable to plaintiff for his injuries resulting therefrom. Lee v. City of Baton Rouge et al. [243 La. 850], 147 So.2d 868; Cook v. City of Shreveport [La.App.], 134 So.2d 582; White v. City of Alexandria [La.App.], 35 So.2d 810.
“The fact that Gorton, in the operation of his business on the abutting property had trucks driving over the sidewalk for over twenty years, his testimony that the damage to it occurred during this period, that his trucks contributed to it, and that he failed to repair or have the City repair the damage so caused, renders Gorton *328 and his insurer liable for the injuries of plaintiff resulting therefrom. Having created a dangerous condition on a public sidewalk, one is under a duty to see that others are not injured thereby, and is liable for his negligence in failing to do so. Arata v. Orleans Capitol Stores, Inc. et al. [219 La.1045], 55 So.2d 239; Lee v. City of Baton Rouge et al, 147 So.2d 868. See also American Law Institute, Restatement of the Law of Tort, Sec. 350.”
Therefore, the responsibility of an abutting property ownfer does not rest on such ownership, but rather on his negligence in creating and failing to repair the damage. Arata v. Orleans Capitol Stores, Inc., et al., 219 La. 1045, 55 So.2d 239.
On the question of the liability of Gorton’s lessee, while there is some evidence indicating that the lessee’s use of the property in the same manner as its lessor further damaged the sidewalk, the proof does not establish that fact to a legal certainty or by a preponderance of the evidence. Gor-ton testified that the sidewalk was, in a manner, destroyed when he leased the property in 1958. It may well have been that the lessee’s trucks may have further damaged the sidewalk, but there is no positive proof to substantiate that fact. The admission of lessee’s president that the sidewalk further deteriorated, during its occupancy of the premises, through weather conditions, does not establish the lessee’s responsibility for such conditions or its liability for the effects flowing therefrom. In the absence of proof that the lessee rendered the sidewalk more dangerous than already existed, there is no basis for holding it liable. Therefore, we find no error in the judgment rejecting plaintiff’s demands as concern Quality Roofing & Sheet Metal Works, Inc., and its surety.
Nor do we find any basis for awarding the City judgment over against Gorton and his insurer. The contention of the City in this regard is that its liability is not joint with that of Gorton, who caused the defect and who is under responsibility for its repair. The City’s contention is predicated on the proposition that it is only secondarily or vicariously responsible to plaintiff for its failure to repair the defective sidewalk when a third party has created the defective condition. As was pointed out in Lee v. City of Baton Rouge et al., supra, a municipality is not liable for the acts of third parties who place obstructions or cause defects in public ways or sidewalks unless it is guilty of negligence by failing, within a reasonable time after it has notice, either actual or constructive, of the existence of the defective condition, to repair it and thereby comply with the duty imposed on it by law to keep its streets and sidewalks in a reasonably safe condition for public use.
Plaintiff’s case is predicated exclusively on the separate and independent negligence of the City in failing in its duty to repair a defect after it knew, or should have known, that the condition of the sidewalk was hazardous and was likely to cause injury to the traveling public. Accordingly, as was held in Lee v. City of Baton Rouge et al., supra, liability of the City is primary in nature. See, also: Arata v. Orleans Capitol Stores, Inc., et al., supra; White v. City of Alexandria, 216 La. 308, 43 So.2d 618.
Thus, as was stated in the Lee case,
“ * * * Under Article 2315 of our Civil Code, as interpreted by an unbroken line of jurisprudence, any act, or omission of a legal duty which is a proximate cause of an injury to another, renders the party charged with such act or omission liable in damages. In the case of a joint tortfeasor it is not necessary that the act or failure in the preformance [sic] of duty be the sole cause of the accident or injury; it is enough that it is a contributing cause. In the case at bar it is charged that the City knew or should have known of the defect and failed to repair *329 it. If this be true, and it must be admitted as true for purposes of a summary judgment, it is liable in solido with the other defendant for its failure in its duty to keep the sidewalk in repair was such that but for it the accident could not have happened.
“Since we find the allegations of the petition sufficient to show fault on the part of the City, its liability cannot be regarded as secondary, vicarious or derivative.” (147 So.2d 868, 871.)
Nor do we find any basis for an award of a judgment in favor of Gorton over against his lessee, Quality Roofing & Sheet Metal Works, Inc. Under the terms of the lease agreement between them the lessee assumed full responsibility for the condition of the premises and their repair, as well as for any injury which the lessee or any person present on the premises might sustain by reason of the condition or defect in the leased premises, and agreed to hold the lessor harmless. The accident for which plaintiff sues did not occur on the leased premises but on an abutting sidewalk dedicated by the City for public use. The lease agreement specifically describes what is meant by “premises” and the sidewalk is not included in that description. The defective condition of an adjacent sidewalk created by the owner of the abutting property cannot be construed to constitute a condition or defect in the premises themselves under the terms of this lease. The responsibility of an owner of abutting property to repair damage done by him to a sidewalk is, as heretofore pointed out, a personal obligation. His liability for a breach of his duty which results in injury to others is a tort based on negligence within the purview of LSA-C.C. Art. 2315. A lessee, by appropriate language in a lease, may assume the owner-lessor’s responsibility for accidents occurring on an abutting sidewalk. See: Green et al. v. Southern Furniture Company et al., La.App. 1st Cir., 1957, 94 So.2d 508; 20 La.Law Rev. 76. However, it suffices to point out here that, under the terms of the instant lease, the lessee assumed no such responsibility.
Remaining for consideration are defendants’ pleas of contributory negligence. Defendants contend that plaintiff was contributorily negligent in exposing himself to a known dangerous condition and in failing to keep a proper lookout. Only on one occasion prior to this accident had plaintiff used the sidewalk in question and that was in the daytime. He had lived in the vicinity only a brief period, probably not in excess of six weeks. The night was dark and the location, unfamiliar to plaintiff, was not lighted. In disposing of these pleas, the court pointed out:
“A condition which becomes a trap at night might very well not appear so in the' daytime. One could, with only cursory attention to the condition of the ground, traverse the sidewalk in question safely in the daytime, as the holes and obstructions are easily seen. At night, though, the traveler is in a much different position and one that he might not necessarily be made aware of by crossing the area once in daylight. The plaintiff cannot be charged with knowledge of the dangerous condition of the sidewalk at night by his one trip over it. In the daytime when one has no difficulty crossing it, he would have no particular reason to be impressed by the danger the area would hold at night or the difficulty of traversing it when the obstacles were not readily apparent. There is no evidence in the record to support a conclusion that the plaintiff was not exercising that degree of care which his knowledge of the area imposed on him. The defendants could not, of course, have furnished direct evidence of this, but these must at least be facts which would indicate that plaintiff had notice of the highly dangerouf area he was *330 crossing, to impose upon him the duty of leaving the sidewalk and going around it. The defendants have not met the burden of proof of showing the contributory negligence of plaintiff.”
Finally for determination is the matter of an appropriate award to compensate plaintiff for the injuries sustained and the pain and suffering endured. Plaintiff, 45 years of age, stepped in a hole in the sidewalk, “turned” his ankle, and fell. He sustained a comminuted fracture involving distally the left fibula. The ligaments of the ankle were torn. Much swelling and pain resulted. Plaintiff was under hospitalization for a period of 10 days, beginning August 27, 1961. Under treatment by Dr. J. Richard Brown, a surgeon, an open reduction was made of the fractured ankle. The fragments were manipulated into place and a cast applied. In January, 1962, disability in plaintiff’s ankle was estimated at 50%. Dr. Brown was of the opinion that this disability would be reduced eventually to 20 or 30%.
Plaintiff was examined on April 2, 1963, by Dr. Ford J. Macpherson, an orthopedist, who advised that plaintiff submit to another operation for a more permanent fixation of the ankle bone and joint. In the absence of such an operation, the doctor estimated disability in plaintiff's foot at 35%. The cost of such an operation was estimated at $1,000.00.
Other than for an error in calculating the loss of wages of $35.00, we find no manifest error in the award made by the trial court. It appears neither inadequate nor excessive.
For the reasons assigned, the judgment appealed is amended by increasing the award to $6,911.33 and, as thus amended, it is affirmed. Each of the appellants is assessed with the cost of his or its own appeal.
Amended and affirmed.