LEMMON, Judge.
This is an appeal by Ernest J. PeDotti from the dismissal of his personal injury claim against the Sewerage & Water Board of New Orleans (Board). The injury occurred when PeDotti drove into an opening in front of a metal catch basin in an area abutting St. Louis Street in the City of New Orleans. The catch basin itself is owned and maintained by the Board.
The Board filed third party demands against six other parties, two of which were dismissed from the suit by summary judgment, and these dismissals were not appealed. The remaining third party de *787 fendants are (1) Southern Hardware and Lumber Company, Inc., owner of 2712 St. Louis Street, in front of which the catch basin and opening are located; (2) Joseph C. Goods, Jr., the lessee of the 2712 St. Louis Street premises; (3) The Times Picayune Publishing Corp., owner of 2720 and
2724 St. Louis Street, which are adjacent properties west of the Southern Hardware property, and (4) The City of New Orleans. The pertinent properties are shown on a survey filed in the record, a partial reproduction of which is included in this opinion for reference.

*788 The Board also appealed from the judgment dismissing its demands against these third party defendants to protect itself in the event that the judgment of the trial court is reversed. The City and Southern Hardware have answered this appeal, requesting damages for frivolous appeal on the ground that there is no evidence in the record to support any third party claims against them.
St. Louis Street, on the Lake side of Broad Street, extends for a total of three blocks. The 2700 block of St. Louis Street has commerical buildings on the Canal Street side and a large drainage canal on the other side of the street. The topography in front of 2712 St. Louis Street (as of the date of trial) is shown on the survey. The 25 foot surfaced roadway extends from the canal headwall toward the buildings on the Canal Street side, and the shoulder of the road, 15 feet in width in the vicinity of the catch basin, extends from the edge of the roadway to the property line of the buildings. This shoulder is used for parking and for loading and unloading purposes by the commercial establishments in the area and their customers.
On March 8, 1966, PeDotti went into the Helshro Furniture & Appliance Company, which is located at the corner of North Broad and St. Louis Streets (see survey), to pick up a repaired television. He parked his automobile in front of 2712 St. Louis Street, the premises owned by Southern Hardware and leased to J. C. Goods.
PeDotti parked on the cement shoulder (more accurately described as a cement driveway or ramp extending to the roadway) at an angle to the building. In the parked position the front of his car was approximately two feet from the building and the rear end was slanted in the direction of North Broad Street. Approximately five feet to his right was a truck parked parallel to the buildings. There were also other vehicles parked on his left.
As PeDotti left Helshro’s with an employee carrying his repaired television, he got into his parked automobile on the left or driver’s side, while the employee placed his television on the front seat from the right front door. The truck that was previously parked on his right was no longer there.
PeDotti backed up approximately five to ten feet, cutting his wheels so as to move his automobile into a position more or less parallel to the adjacent buildings. He then proceeded forward about three to five feet, and his left front wheel fell into the opening. As shown in the survey, this opening measures approximately 2 feet by 3.9 feet and is located at a distance of 10 feet from the front of the building at 2712 St. Louis Street. This is the area that the truck occupied when PeDotti initially parked his vehicle.
NEGLIGENCE OF PeDOTTI
PeDotti testified without refutation or contradiction that he was unaware of the presence of this opening until he drove into it. He had been to Helshro’s several times previously, but had never parked in this particular area before, and correspondingly had no opportunity to have become aware of this opening. His automobile blocked any view he might have had of the opening when he returned to it and engaged in the maneuvers which ultimately led to his accident.
The record does not support any finding of contributory negligence. PeDotti had a right to assume that there were no traps or unexpected dangers in this area, and he acted reasonably and prudently under these circumstances. See Gayle v. Department of Highways, 205 So.2d 775 (La.App. 1 Cir. 1967), writs refused 251 La. 932, 207 So.2d 538 (1968). While PeDotti was obligated to see what he should have seen and to avoid an obvious danger, this opening was not obvious to him, and he satisfactorily explained why he did not see it.
*789 LIABILITY OF THE SEWERAGE & WATER BOARD
The opening into which PeDotti drove is apparently the result of unplanned developments occurring through the uses and changes this area has undergone. The metal catch basin (adjacent to the opening) was constructed in 1931 by the Board, which is clearly responsible for its maintenance. LSA-R.S. 33:4071. The catch basin was originally located in a ditch or gutter, and the commercial tenants apparently constructed ramps or driveways across the gutter for parking and loading purposes. The ramps or driveways extend between the buildings and the street, and it is questionable whether the gutter beneath the paving is still functional. The driveways cover the gutter, except for the opening in question, which presumably was allowed to remain in order to allow the flow of surface water into the catch basin.
Therefore, the opening, while perhaps a vestige of a gutter, is essentially a part of, or an extension of, the catch basin unit. If the opening ever served as simply part of an open gutter, time and change have altered its identity and probable function.
While the creation of the dangerous situation (the opening) was undoubtedly caused by the party who paved the gutter, it was allowed to exist in this condition for a number of years by the Board. Furthermore, the gutter in which the catch basin was placed is on property owned by the Board,[1] and while ownership is not necessarily the key to liability for dangerous conditions of property where a public body is involved, nevertheless the driveways were constructed across a gutter on property owned by the Board and were allowed by the Board to remain in this condition.
We believe that where an abutting owner causes a dangerous condition on public property, the public body becomes liable in solido with the property owner for injuries caused by the condition, if the public body had actual or constructive knowledge thereof and failed to correct the defect within a reasonable time. Lee v. City of Baton Rouge, 243 La. 850, 147 So.2d 868 (1963); 63 C.J.S. Municipal Corporations § 870. It is therefore necessary that the plaintiff prove that the condition was patently dangerous or in the nature of a trap, and that the Board had either actual or constructive knowledge of the condition. Garrett v. Sewerage & Water Board of New Orleans, 235 So.2d 164 (La.App. 4 Cir. 1970).
In this case it is clear that this opening was patently dangerous and in the nature of a trap.
As to notice, Mrs. Schroeder, the owner of Helshro’s, testified that she had twice reported previous accidents involving this opening to the Board at least one year before PeDotti’s accident. This is sufficient to constitute actual notice. We therefore conclude that the Sewerage & Water Board is responsible for the plaintiffs injury.
*790 SEWERAGE & WATER BOARD’S THIRD PARTY CLAIMS
While abutting property owners will not be liable for defects in an area which a public body is charged with maintaining, they will be liable when they actually cause or contribute to the defect or dangerous conditions. See e. g. Ford v. City of Shreveport, 165 So.2d 325 (La.App. 2 Cir. 1964) ; Breaux v. G. H. Leidenheimer Co., 204 So.2d 59 (La.App. 4 Cir. 1967), writs refused 251 La. 740, 743, 206 So.2d 92, 93 (1968).
If the Board proved that one or more of the third party defendants actually caused the defective condition, the Board would be entitled to contribution from any other negligent party.[2] According to these criteria, we will separately discuss the liability of the third party defendants.
1. THE TIMES PICAYUNE PUBLISHING CORP.—The Times Picayune cannot be found responsible for the opening which is entirely in front of adjacent property and is 12 feet from the extended boundary line of its property. This party removed an existing driveway in 1964 and repaved the area with concrete, but we must reject any contention that by covering a gutter in front of its own property, the Times Picayune contributed to the creation of a dangerous condition in front of adjoining property.
2. SOUTHERN HARDWARE & LUMBER COMPANY, INC.—Southern Hardware owns the premises at 2712 St. Louis Street, and the extended property lines of these premises would encompass the location of the opening in question. There is no evidence in the record which can support the Board’s contention that Southern Hardware created the dangerous condition in this case. It is fault which controls in these cases and not simply ownership of the premises abutting public property on which a defect or dangerous condition exists. Ford v. City of Shreveport, supra; Breaux v. G. H. LeidenheL mer, supra.
3. J. C. GOODS, JR.—Goods leased 2712 St. Louis Street from 1964 through the date of the accident, and the record is clear that the paving which created the dangerous condition occurred before 1964. However, the Board points to admissions of fact directed to Goods, which request an admission that he placed pavement over what used to be an open gutter, because LSA-C.C.P. art. 1496 deems admitted any requested admissions to which there is no response. However, the record does not specify the actual area in which this paving was done or the nature of this area before the paving was undertaken, and we cannot therefore determine the effect of this statutorily admitted paving. To hold Goods liable would require a strong measure of conjecture and assumption in which we shall not engage, especially in the light of the positive chronological evidence.
*791 4. CITY OF NEW ORLEANS —The City has the obligation for maintenance of its streets and sidewalks. Lee v. City of Baton Rouge, supra. The entire 60-foot strip owned by the Board was never dedicated as a street, and although the City maintained and became responsible for the surfaced roadway, it was not responsible for the area in which the dangerous or defective condition was located. The City therefore had no legal responsibility for the accident.
FRIVOLOUS APPEAL BY SEWERAGE & WATER BOARD
Under the circumstances of this case there is no merit to the claims of the City and Southern Hardware for attorney’s fees from the alleged frivolous appeal by the Board, since the Sewerage & Water Board’s third party claims were certainly serious and arguable. Shephard v. Checker Cab Company, 230 So.2d 343 (La.App. 4 Cir. 1970).
QUANTUM
It is undisputed that PeDotti suffered from spondylosthesis prior to the accident. He had injured his back in 1958 and undergone three months of treatment. The diagnosis was “an acute lumbar sacral syndrome and spondylosthesis grade 3”. He underwent a check-up in 1959 at the doctor’s request and did not return until December, 1965, three months before the accident, when he again complained of pain in the lumbosacral area. As he had done before, the treating doctor, an orthopedic specialist, recommended surgery for possible relief, but PeDotti refused.
PeDotti next saw the doctor the day after the accident. An acute lumbosacral and cervical syndrome was diagnosed, and PeDotti was treated with diathermy and intermittent traction. He underwent examination or treatment 45 times from the accident until September 14, 1966, at which time the doctor felt he had made sufficient recovery to be discharged.
The doctor testified positively that the severity of PeDotti’s condition was increased after the accident.
About four months later, PeDotti consulted another orthopedic specialist, who also recommended surgery. At this time PeDotti agreed to the operation in order to hopefully alleviate the pain. However, the surgery was never performed because of an intervening problem unrelated to the accident.
The second doctor, not having treated PeDotti prior to the accident, could not offer an opinion on the extent of aggravation caused by the accident, but did state that a person with these problems was more vulnerable to injury.
It is impossible to evaluate with exactitude the extent of PeDotti’s increased suffering and disability and the medical services required as a direct result of the accident. However, the medical and lay testimony in this case convinces us that the PeDotti’s back condition was severely aggravated as a result of the accident of March 8, 1966, causing him greater pain and more restricted activity, as well as additional treatment which he would not have otherwise required. PeDotti has proved with sufficient legal certainty the special damages in the amount of $674.36 for medical and hospital expenses which were required as a result of this accident. Additionally, we believe an award of $6,250.00 is adequate compensation for general damages.
For the above reasons the judgment of the trial court is reversed and judgment is entered in favor of plaintiff, Ernest J. PeDotti, and against the defendant, Sewerage & Water Board of New Orleans, in the amount of $6,924.36, together with legal interest thereon from the date of judicial demand until paid, and for all costs, including expert fees of $150.00 each for the testifying physicians.
Reversed and rendered.

. While LSA-R.S. 38:4078 states that title of all property acquired by the Sewerage & Water Board of New Orleans is vested in the City of New Orleans and not the Sewerage & Water Board, the area involved in this law suit (including the opening and adjacent street) is actually owned by the Sewerage & Water Board.
In 1896 the Drainage Commission was created and was given the power to expropriate property * * * “in its name.” Acts 1896 No. 114, § 8 (see also 1898 No. 63, § 8). In 1900 the Drainage Commission acquired the property in this area.
Acts 1899, Ex. Sess. No. 6, § 8, the Sewerage & Water Board of New Orleans was created, and in Acts 1902, No. Ill, § 8, the Sewerage & Water Board was merged with the Drainage Commission and acquired all of its rights and obligations. See also Acts 1934, 2nd Ex. Sess. No. 36, § 1.
Even though the Sewerage & Water Board does not now acquire property in its own name, it does own property, including the property involved in this law suit.

. The Board has cited Appalachian Corporation v. Brooklyn Cooperage Co., Inc., 151 La. 41, 91 So. 539 (1922) for the proposition that if the Board is negligent, it is only passively negligent and entitled to indemnity from the defendant or defendants who are actively negligent in creating the dangerous condition complained of. However, as Lee v. City of Baton Rouge, supra, 147 So.2d at 869, points out, this case does not stand for that proposition, but only allows indemnity where defendant is liable because of status alone, and not because of any personal fault. In Appalachian Corporation, supra, a builder was allowed indemnity from the possessor and recent seller of the building for an amount recovered by a person who was injured as a result of a defect of the premises for which an owner is automatically liable. There, the purchaser did not know the defect or have an opportunity to remedy it and was found not to be negligent in any manner, but responsible merely by the virtue of his ownership. On the other hand, in this case the Board was negligent (by knowing about the defect and failing to repair it) and must be restricted to seeking contribution (rather than indemnity) from any others who were also at fault by causing or contributing to the defect.