444 So.2d 1317 (1984)
Wayne R. DUNNE, Individually and as Natural Tutor of/for the Minor Kevin Dunne
v.
ORLEANS PARISH SCHOOL BOARD and Charles V. and Lynne Cuccia, d/b/a Gay-Lynne School of Dance.
No. CA-0985.
Court of Appeal of Louisiana, Fourth Circuit.
January 12, 1984.
Writ Granted April 2, 1984.
*1318 Trevor G. Bryan, Jefferson, Bryan & Gray, New Orleans, for appellant Orleans Parish School Bd.
Peggy LeBlanc, Michael Riehlmann, New Orleans, for plaintiff/appellee Wayne R. Dunne.
*1319 W. Marvin Hall, Hailey, McNamara, Hall, Larmann & Papale, Metairie, for defendants/appellants Charles V. and Lynne Cuccia, d/b/a Gay-Lynne School of Dance.
John A. Cvejanovich, Law offices of James J. Morse, New Orleans, for defendant/appellee Louis Koster.
Before BYRNES, LOBRANO and WILLIAMS, JJ.
LOBRANO, Judge.
Wayne Dunne, on behalf of the minor Kevin Dunne, brought this action against the Orleans Parish School Board (hereinafter referred to as the Board) and Charles V. and Lynne Cuccia, d/b/a Gay-Lynne School of Dance (hereinafter referred to as Gay-Lynne), seeking damages for the injury to Kevin who fell off a gymnastic ring in the gymnasium of Martin Abramson High School, owned and operated by the Board. Third party demands were filed by the Board against Gay-Lynne and Louis Koster, as tutor of the minor Kirk Koster. Kirk Koster was a minor who was involved in the incident which resulted in plaintiff's injuries. Both denied liability, and Gay-Lynne sought full indemnity against the Board. The trial court found in favor of plaintiff and against the Board and Gay-Lynne holding them liable jointly and in solido in the full amount of $38,788.45. The various third party demands were dismissed. From this judgment the Board and Gay-Lynne appeal.
The pertinent facts are as follows: On May 15, 1980, 9 year old Kevin Dunne accompanied his parents to a dance revue given by Gay-Lynne School of Dance. Gay-Lynne had leased the auditorium at Martin Abramson High School in order to stage the event.
Approximately mid-way through the dance revue Kevin and his 10 year old cousin Robbie went to get a drink of water. They went to the water fountain in the lobby. While drinking water they could see into the gymnasium which was adjacent to the lobby. Upon seeing that the gymnasium lights were on, they looked into the gym and witnessed several boys playing on the gymnastic rings that were suspended from the ceiling. Robbie recognized one of the boys as Kirk Koster, a friend he had played with in the past, so he went into the gym to talk with Koster. Kevin followed him. Kevin, by standing on a chair provided by one of the youths, grabbed onto the rings. The other boys pulled Kevin back by the feet and let him go. As Kevin was swinging forward the rings came to an abrupt halt, causing him to fall to the floor and injure himself.
LIABILITY OF THE BOARD
Plaintiff contends that the Board was guilty of culpable negligence in failing to properly safeguard the gymnasium and secure the rings in light of the fact that it had specific knowledge that the gym was in close proximity to the auditorium and would remain open and accessible to children who might wander into it. Further it was contended that the Board was fully aware of the potential dangers of children playing on the rings yet failed to take the proper precautions to prevent their misuse.
We affirm the trial court's decision with regard to the Board's negligence. The testimony of Dr. Octave Tournillion, site principal of Abramson High School, who was in charge of and responsible for the approval and rental of the premises to Gay-Lynne clearly indicates that he recognized the dangers posed by the rings. He testified that he knew and recognized the rings to be dangerous, and as a result of that very knowledge, made it school policy that the rings were to be tied up to keep the students from playing on them "because the rings can be a dangerous element". He further testified he had no idea whether the rings were properly tied up on the evening in question.
Under Hill v. Lundin, 256 So.2d 620 (La.1972) and its progeny, Louisiana employs the duty risk analysis in determining whether a particular defendant is guilty of negligence. This duty risk analysis involves the following inquiries.
The first is one of causation. There must be a causal relationship between the harm to the plaintiff and the defendant's alleged conduct. Once plaintiff proves that *1320 the action of defendant was a substantial cause in fact of the accident, it then must be ascertained whether defendant had a duty to protect against a foreseeable risk, and whether that duty was breached. Hill v. Lundin, supra.
In addition to the above requirements a landowner's liability is further governed by the test stated in Walker v. Union Oil Mill, Inc., 369 So.2d 1043 (La. 1979).
"In determining an owner's liability under Civil Code Articles 2315 and 2316 the test has been stated to be whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others. Shelton v. Aetna Casualty and Surety Co., 334 So.2d 406 (La.1976). The owner and operator of a facility has the duty of exercising reasonable care for the safety of persons on his premises and the duty of not exposing such persons to unreasonable risks of injury or harm. In determining a particular defendant's duty consideration should be given to the nature of the facility and the dangers presented by it. In considering a defendant's duty to a particular person, consideration should be given to the person's age, maturity, experience, familiarity with the premises and its dangers, and other such factors which might increase or decrease the risk of harm to that person. The duty would be greater to a person of young age and immature judgment. It would be lesser to a person with experience, knowledge and familiarity with the premises." Id. at 1047. (emphasis added)
Applying those tests to the case at bar, it becomes clear that the Board failed to act reasonably in the management of the premises in view of the probability of injury to others, especially young children such as Kevin Dunne. As recognized by the Board's own agent, Dr. Tournillion, an unsupervised unlocked gymnasium with gymnastic rings posed a grave danger to children. Recognizing this danger it was the school's policy to lock the gym and secure the rings. On the date in question the Board breached this duty. But for their failure to lock the gym, Kevin Dunne would not have been injured on the rings.
The Board argues that it was the failure of Wayne Dunne, Kevin's father to properly supervise him that led to the accident. The record shows that Kevin and his cousin requested and was granted permission to leave the auditorium to get a drink of water. The action of the parents in permitting them to temporarily leave the auditorium does not fall below the standard of parental care outlined in Smolinski v. Taulli, 276 So.2d 286 (La.1973). In Smolinski the Supreme Court stated:
"Failure to take every precaution against every foreseeable risk or to use extraordinary skill, caution, and foresight does not constitute negligence or contributory negligence.... A mother of small children is not required to chain them up or to act as their constant jailer in order to absolutely secure them from exposure to hazards negligently created or maintained by a tortfeasor. She is required only to use reasonable precautions, and her conduct in this regard is not negligent if, by a common-sense test, it is in accord with that of reasonably prudent persons faced with similar conditions and circumstances...." at p. 290.
Measured by that standard the Dunne's precautions against harm to their child were reasonable and did not fall below the standard of conduct required for such protection.
Lastly the Board claims that it should fall under the provisions of La.R.S. 9:2795, which provides for limited liability of landowners whose property is used primarily for recreation purposes. The stated purpose of this statute was to encourage owners of land to make their property and water area available to the public for recreational purposes by limiting their liability. See Comments to La.R.S. 9:2795. The Board clearly does not qualify under the act in that its land is used primarily for educational and not recreational purposes. In addition Paragraph B of the statute exempts from its coverage any owner of "commercial recreational developments or *1321 facilities". In discussing when a facility is a "commercial" one for purposes of that exception, the Third Circuit held that the landowner/lessor must intend to make a profit to be so exempted. Thomas v. Jeane, 411 So.2d 744 (La.App. 3rd Cir.1982). Surely the Board intended to make a profit when it collected the $516.00 in rent from Gay-Lynne and therefore would not come under the lienent standard of care imposed by La.R.S. 9:2795.
LIABILITY OF GAY-LYNNE
The trial court found Gay-Lynne liable to plaintiff not because of any negligence on its part, but rather as a result of the following provision in the lease agreement between Gay-Lynne and the Board.
"The applicant group agrees to assume responsibility for any legal liability for injury or damage to the person or property of the applicant or others and for any injury or damage to school personnel or property in connection with the use of school facilities. (emphasis ours) The applicant group agrees to reimburse the board for any such damage."
Since the trial court found no negligence on Gay-Lynne's part, it was clearly erroneous to hold Gay-Lynne liable based on the above quoted provision. That provision is essentially an indemnity agreement between Gay-Lynne and the Board. Plaintiffs were not a party to the contract and Gay-Lynne cannot be held liable to them on that basis. See Brown v. Soupenne, 416 So.2d 170 (La.App. 4th Cir.1982). We therefore reverse that portion of the lower court ruling.
The Board complains that Gay-Lynne should be responsible on its third party demand for indemnification. We disagree. Louisiana law is well settled to the effect that any time a contract of indemnity calls for one to be indemnified against the consequences of one's own negligence, that contract is to be strictly construed. The courts have universally held that unless such intention is expressed in unequivical terms, indemnity will be denied. Polozola v. Garlock, Inc., 343 So.2d 1000 (La. 1977). Our interpretation of the subject clause is that it does not express an intent to impose an obligation so extraordinary and harsh that Gay-Lynne is to be liable for damages occasioned by the Board's sole negligence.
Additionally the clause only provides for indemnity in connection with the use of the school facility leased. Gay-Lynne leased and was only authorized to use the auditorium, not the gymnasium where the injuries occurred. Rule 1 of the "Orleans Parish School Board's Rules and Regulations Regarding Use of School Facilities" provides:
"The use of school facilities is limited to the specific areas requested (cafeteria, gymnasium, athletic field, auditorium, classrooms, etc.)."
Mrs. Delores Centanni, secretary of facilities use for the Orleans Parish School Board testified that different portions of the high school was subject to be let singly, or in combination with other portions and that the rental would vary with the particular portion of the premises that was leased. Mrs. Centanni further testified that Gay-Lynne leased only the auditorium and not the gymnasium. That if they had leased the gymnasium, they would have been required to pay an additional amount for that portion of the premises. Clearly a lessee cannot be held liable on the basis of his lease for injuries occurring outside of the leased premises.
LIABILITY OF LEWIS KOSTER
Lewis Koster, the father of Kirk Koster, a minor with whom the plaintiff was allegedly playing at the time of the accident was also named as a defendant. Neither appellee nor appellants in brief dispute the trial court's dismissal of their claims against Lewis Koster. Thus we consider any appeal on the portion of the judgment pertaining to Lewis Koster to be abandoned.
The judgment of the trial court in favor of the plaintiff and against the Orleans Parish School Board is affirmed. The judgment against Charles V. and Lynne Cuccia, d/b/a Gay-Lynne School of Dance is reversed. *1322 All other judgments of the trial court are affirmed.
AFFIRMED IN PART, REVERSED IN PART.