ARMSTRONG, Judge.
Third-party defendants, The General Conference of Seventh-Day Adventist and National Union Fire Insurance Company (“the church”), appeal the trial court’s judgment granting third-party plaintiff’s, Facility Management of Louisiana, Inc., the Louisiana Stadium and Exposition District and Republic Vanguard Insurance Company (“the Superdome’s”), motion for summary judgment, and denying their motion for summary judgment. We affirm the trial court’s judgment.
Plaintiff, Brenda Hamilton, and her husband, a minister of the Seventh-Day Adventist Church, were attending a church conference at the Superdome. Upon leaving the conference the Hamiltons exited the Superdome to get their car which was parked in the Superdome parking lot. As the couple proceeded down the sidewalk next to the exit road, they came to an interruption in the sidewalk where the exit road from the parking lot underneath the Superdome meets the access road adjacent to the Superdome. A man in uniform, presumably a security or traffic guard, was standing in the access road directing traffic on the access road and parking lot exit. Cars were coming out of the parking lot and Mr. and Mrs. Hamilton waited on the sidewalk until the man directing traffic stopped the cars leaving the parking lot. The Hamiltons then started to cross but a car blocked the pedestrian path. Mr. and Mrs. Hamilton, therefore, followed a group of pedestrians around the back of the car. As they walked behind the car across the parking lot exit lane, a parking gate arm descended and struck Mrs. Hamilton on the back of her head and shoulder. As a result of the accident, Brenda Hamilton filed suit against the Superdome and various other defendants. The Superdome answered plaintiff’s lawsuit and filed a third-party petition against the church and its insurer. The third-party demand stated a claim for contractual indemnity based on an earlier executed lease agreement between the Su-perdome and church.
Both the Superdome and the church filed motions for summary judgment. The trial *1200 court heard the motions and rendered judgment granting the motion for summary judgment of the Superdome and denying the church’s motion for summary judgment. The church’s motion for a new trial was denied.
On appeal the church asserts two claims:
(1) The lease agreement between the church and the Superdome provides no basis for contractual liability because the agreement was limited to the leased facilities which did not include the parking lot.
(2) The indemnity provisions in the lease do not require the church to indemnify the Superdome for claims brought against it by the plaintiff.
As to the first claim, the church relies on paragraph 17 of its lease agreement with the Superdome to argue that indemnification is limited to accidents which occur on the leased facilities. Paragraph 17 provides:
17. The lessee shall be liable for all damages to building and equipment, normal wear and tear excepted, and agrees to indemnify and hold the LESSOR harmless from any claims or suits arising out of injury or death to any person or damage to property resulting from use of said building. LESSEE will be required to furnish an appropriate certificate of insurance showing that there is in effect, and will remain in effect throughout the term of the lease, comprehensive general liability insurance, including public liability and property damage, written by an insurer authorized to do business in the State of Louisiana in the following amounts:

Comprehensive general liability

(including personal injury, contractual, and products liability)
Bodily injury (each occurrence) $1,000,000.00
Property damage (each occurrence) 300,000.00
Aggregate 1,000,000.00
Worker’s Compensation (Statutory)
The LESSEE shall name as additional insureds, HMC Management Corporation, its officers, directors, agents employees, as well as the Louisiana Superdome and the State of Louisiana and their agents, (emphasis added)
The agreement reveals that the only facilities leased were in the building; ie. the main arena, the quadrant, the Locker Rooms, Star Suites and Mezzanine. Thus, plaintiffs argue, the church has no obligation to indemnify the Superdome for an accident which occurred in the parking lot. We disagree.
The church can not read paragraph 17 independently of the rest of the contract. To determine the meaning of each provision all provisions of a contract should be read together. Dufrene v. Bernstein, 195 La. 575, 197 So. 236 (1940). The Super-dome submits that the Addendum, numeral 5, clarifies that the indemnification clause was intended to apply to the facts of this case. Numeral 5 provides:
5. The paragraph titled “Indemnity” in the contract Addendum dated July 1, 1977 is amended to read as follows: “A Lessee, by entering into said agreement, shall hereby waive any claim against and shall indemnify, save and hold harmless the HMC and its agents and employees for any damages to the premises, fittings, equipment and furnishings of the facilities occasioned by or in connection with the use of the premises by Lessee during the time the premises are used or occupied under said agreement, and against claims of any and all persons for injury to persons or damage to property occasioned by or in connection with the use of the premises by Lesee.”
This language is clear and precise. It designates that the lessee shall indemnify the Superdome for any damages “occasioned by or in connection with the use of the premises by Lessee.”
The church cites two cases which they argue are precedents in this area: Ford v. City of Shreveport, 165 So.2d 325 (La.App. 2nd Cir.1964) and Dunne v. Orleans Parish School Board, 444 So.2d 1317 (La.App. 4th Cir.1984), reversed on other grounds 463 So.2d 1267 (La.1985). A factual situation similar to the present case occurred in Ford where plaintiff fell on a *1201 sidewalk just outside of the leased premises. Plaintiff sued the owner and lessor of the abutting property and its lessee. Lessor, like the Superdome in the present case, sought indemnity from the lessee under the terms of the lease. In denying recovery, the court stated as follows:
The accident for which plaintiff sued did not occur on the leased premises but on an abutting sidewalk dedicated by the city for the public use. The lease agreement specifically described what is meant by “premises” and the sidewalk is not included in the language ... A lessee by appropriate language in a lease, may assume the owner/lessor’s responsibility for accidents occurring on the abutting sidewalk ...
Ford can be distinguished from the instant case in that the language used in the lease agreement between these parties was appropriate to indemnify the Superdome. It focused on the nature of the claim, “in connection with the use of the premises”, as opposed to the location of the accident, “on the leased premises”, which was the language used in the Ford contract.
Nor do we find Dunne to be a precedent. In Dunne, the lessee of the premises entered into an agreement with the School Board which contained the following language:
The applicant group agrees to assume responsibility for any legal liability for injury or damage to the person or property of the applicant or others for any injury or damage to school personnel or property in connection with the use of school facilities.
The accident in question occurred in the school gymnasium. The lessee had leased the auditorium but not the gymnasium. The court therefore found that the leased facilities did not include the situs of the accident. The church argues that the result should be the same in the present matter because the sidewalk adjacent to the access road was not part of the leased premises and the church assumed no responsibility for that area. We disagree.
The lease agreement in the instant case, by its language, “occasioned by or in connection with the use of the premises”, contemplates that the church may need access to adjacent walkways and the parking lot of the Superdome. Therefore it is reasonable to conclude that the parties intended for the indemnification provision to extend to the use of these areas. On the other hand, it is not reasonable for the lessor, School Board, in Dunne to argue that it was indemnified from liability under the facts of that case. The plaintiff in Dunne was a young child who wandered from the auditorium into the school gymnasium and was injured while playing on the gymnastic rings. The lessee leased only the auditorium portion of the school facility and the facts showed that it was not necessary to use the gymnasium when using the auditorium. More significantly, on appeal the Supreme Court failed to impose liability based on any theory of strict liability or interpretation of the indemnification provision in the lease. Dunne is clearly distinguishable. This claim has no merit.
As to the second claim, the church submits that the indemnity provisions simply do not provide coverage to the Super-dome for its own negligence or strict liability, which are the claims made by the plaintiff against the Superdome. The contract language must evidence an intent to indemnify another for the other’s negligence. Polozola v. Garlock 343 So.2d 1000 (La.1977); Dunne v. Orleans Parish School, supra; Phillips v. Equitable Life Assurance Company, 413 So.2d 696 (La.App. 4th Cir.1982) writ denied 420 So.2d 164 (La.1982); Sovereign Insurance Company v. Texas Pipeline Company, 488 So.2d 982 (La.1986).
Likewise, the church asserts there is no intent to indemnify the lessor for strict liability, especially when the strict liability claim occurs outside the leased premises and is based on a defect over which the lessee had no custody. The church cites Sovereign Insurance Company v. Texas Pipeline Company, supra to support its argument. In Sovereign the Supreme Court concluded that the intention of the parties regarding indemnification for strict liability was not clear and considered law, *1202 custom, usage and equity as factors in interpreting the contract.
The Superdome argues that intent to indemnify is evident in this case. The intent to indemnify another for the other’s negligence can be taken from the contract as a whole. Polozola, supra; Jennings v. Ralston Purina Co., 201 So.2d 168 (La.App. 2nd Cir.1967). Where the contract contains a general indemnity provision together with an agreement to provide comprehensive general liability and contractual insurance, it contains the language necessary to evidence an intent to indemnify the other for the other’s negligence Id. at 174, 175. The existence of general indemnity language contained in the contract and the requirement that the church carry general liability and contractual insurance naming the Superdome as an additional insured makes it consistent with Polozola, supra and Jennings, supra and distinguishes it from Dunne. The indemnification provision in Dunne uses similar language to that contained in the present lease agreement, however, the court in Dunne did not find that the lessee was required to obtain insurance naming the lessor as an additional insured.
Furthermore, it is not necessary that the contract expressly reference strict liability in order for the court to conclude that the parties intended to indemnify liability on that ground as well. In Sovereign, the court reasoned as follows:
In the case of claims, causes of action and liability which may arise under Civil Code Art. 2317, the indemnitor usually is in as good a position as the indemnitee to evaluate and protect against the risk. Cor relatively, indemnity against liability for the custodianship of dangerous things does not provide as great a disincentive to careful and prudent conduct as does indemnity against the consequences of the indemnitees own negligence. Therefore, this court has not established a presumption of contractual intention in the instance of a doubtful provision regarding indemnity against strict liability under Civil Code Art. 2317. 488 So.2d at 986 (emphasis added).
In Hyde v. Chevron, USA., Inc., 697 F.2d 614 (5th Cir.1983), the court granted indemnity in favor of the owner/custodian of a drilling platform from its contract, despite the absence of an express reference to strict liability in the indemnity agreement. The court examined the policies underlying strict liability in formulating its opinion:
Social policy demands that of two innocent parties the risk of injury should fall on the owner or custodian of the injury-producing thing. Usually, this policy produces a fair result. The costs, especially in an industrial accident, will fall on the party best able to afford to pay the damages and the party in control able to prevent injury. The liable party will take steps to prevent accident[s]. That party will insure against the risk and pass the costs on to the general public in whose interest the policy arose.
In Hyde, where the lessee agreed to indemnify the lessor against any claims for injuries to its employees, the court concluded that the policies underlying strict liability argue for permitting indemnity agreements. This claim also lacks merit.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.