463 So.2d 1267 (1985)
Wayne R. DUNNE, Individually and as Natural Tutor for the Minor Kevin Dunne
v.
ORLEANS PARISH SCHOOL BOARD and Charles V. and Lynne Cuccia, d/b/a Gay-Lynne School of Dance.
No. 84-C-0305.
Supreme Court of Louisiana.
February 25, 1985.
Rehearing Denied March 21, 1985.
*1268 Trevor G. Bryan, Jefferson, Bryan & Gray, New Orleans, for defendant-applicant.
Peggy LeBlanc, Michael Riehlmann, Tobias, LeBlanc, Thompson & Waldrup, New Orleans, W. Marvin Hall, Hailey, McNamara, Hall, Larmann & Papale, Metaire, John A. Cvejanovich, New Orleans, for respondents.
LEMMON, Justice.
This litigation resulted from an accident in which nine-year old Kevin Dunne fell from a set of gymnastic rings in the gymnasium of Abramson High School, which was owned by defendant Orleans Parish School Board. On the evening of the accident, Kevin and his parents attended a dance recital given by defendants Charles and Lynne Cuccia in an auditorium in the school complex, and Kevin wandered across the hall from the auditorium into the unlocked gymnasium where the ring set was located. The critical issue as to the Board's liability is whether the set of gymnastic rings in an unlocked and unsupervised gymnasium, which was accessible to children who attended the dance recital in the adjacent auditorium and strayed from the auditorium into the gymnasium, presented an unreasonable risk of harm. We conclude that the risk of harm was not so unreasonable that the Board should be held liable for this particular injury, and we accordingly dismiss the action.
The Cuccias rented the auditorium for the purpose of staging the dance recital. Kevin attended the recital with his parents and sat next to his father in the rear of the auditorium. During the performance, Kevin obtained permission from his father to go into the hall for a drink of water with his ten-year old cousin, Robert. When Kevin and Robert entered the hall, they peered through the open gymnasium door and saw three boys playing on a set of gymnastic rings. Since Robert knew one of the boys, he entered the gymnasium and began a conversation.
While Robert and his friend talked, the other two boys invited Kevin to play on the ring set, which consisted of a pair of rings, each of which was attached to a rope that hung from a cross beam on the ceiling. Since Kevin was unable to reach the rings which were about seven feet above the floor, one of the boys obtained a chair and placed it under the rings. When Kevin stood on the chair and grabbed the rings, one of the boys pulled Kevin by his feet back toward the bleachers as far as he could go. Despite Kevin's pleas, the boy released him, and the rope swung as far as it could, at which point Kevin "flipped off" and fell onto the gymnasium floor, injuring his head and shoulder.
*1269 The high school principal testified that the ring set, when not in use, was secured by means of a separate rope to a point on the wall above the collapsible bleachers, about 12 to 15 feet above the floor. The evidence did not establish who removed the rings from the secured position, but the principal stated that the removal was usually accomplished by use of a pole.
Only Kevin and Robert testified as eyewitnesses to the accident. At first, Kevin testified that when the rope swung "to the end of the rope", he simply "flipped off" the rings. Upon being asked leading questions, however, Kevin verified that he flipped when the swing of the rope was abruptly halted. Robert clarified the fact that the ropes containing the rings were restrained by the tiedown rope from swinging beyond a certain distance from the bleachers wall.[1]
The principal testified further that while all of the outside doors of the gymnasium and the building complex were always locked, it was impractical to keep locked the doors which led from the gymnasium into the hallway of the building complex. The gymnasium was used during the school day for classes, as well as after school and in the evening by athletic teams and community groups. The janitorial staff also required access to the gymnasium late at night for cleaning the place after evening use.
The court of appeal concluded that if the doors had been locked, this accident would not have occurred and that the Board's failure to lock the doors was a cause-in-fact of the accident (which is a "but for" inquiry). 444 So.2d 1317. A determination of cause-in-fact, however, does not necessarily result in liability. Pierre v. Allstate Ins. Co., 257 La. 471, 242 So.2d 821, 828 (1971). After determining causation, the court must also determine what was the duty imposed on the defendant and whether the risk which caused the accident was within the scope of the duty.
When the Board leased the auditorium for events such as dance recitals, it was foreseeable that children would wander into the hall and through the unlocked doors which led into the gymnasium. If the gymnasium contained anything which presented an unreasonable risk of harm to children who wandered inside, the Board had the duty to lock the gymnasium, or to remedy the unreasonably dangerous condition, or to otherwise protect wandering children from the danger. As stated at the outset, the crucial question in determining the Board's duty and the scope of the risk in this case was whether the gymnastic ring set presented an unreasonable risk of harm under the circumstances.
No expert testimony was introduced to show that this normal gymnastic equipment located in a gymnasium was inherently dangerous or presented an unreasonable risk of harm in normal use. There was a potential risk, of course, that even an older child might fall from the suspended rings, and the principal admitted this risk when he stated that "the rings can be a dangerous element". However, the danger was minimal to anyone who could reach the rings, unless that person attempted gymnastic feats beyond his skill. There was also a risk that a child might climb onto the bleachers or onto a table in the gymnasium and fall (or be pushed) from that position, but the bleachers and the table could hardly be considered as presenting an unreasonable risk of harm. The fact that an object can be misused is not determinative of whether it presents an unreasonable risk of harm.
In order to prevent anyone from attempting unsupervised gymnastics on the rings, the principal required that the rings be tied above the bleachers at all times when not in use. In that position, the rings certainly did not present an unreasonable risk of harm. The unidentified children playing in the gymnasium when Kevin entered (or someone who preceded them there) had *1270 apparently removed the rings from the position of security. Still, the gymnastic rings on suspended ropes did not present an unreasonable risk of harm in normal use (which did not include swinging). The real culprit was the unidentified child who misused the ring set by swinging Kevin on the rings against his will.[2]
We conclude that the scope of the Board's duty simply did not encompass the risk that a small child would be enticed by older boys to grab the rings (which had been removed by some person, not shown to be one for whom the Board was responsible, from the position of security) by standing on a chair and would then be forced to swing on the rings against his will, an act outside the normal use of the ring set. There simply is no ease of association between any duty imposed on the Board and the injury which occurred. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972). We therefore conclude that the Board is not liable for this accident under a duty-risk analysis.
Accordingly, the judgment of the court of appeal is reversed, and plaintiff's action is dismissed.
DENNIS, J., dissents finding no reversible error in the lower court decision.
NOTES
[1] Robert testified that the tiedown rope, which was "holding the two ropes for the rings to the wall", would "only go out to a certain length, so that if you swung out instead of going even further it would just stop and jerk, and that's what it did and Kevin flew off of them".
[2] Plaintiff joined as defendants the parents of Kirk Koster, Robert's friend who was in the gymnasium when Robert and Kevin entered, but the evidence established that one or both of the other unidentified boys swung Kevin on the rings.