505 So.2d 79 (1987)
Roxanne MELERINE Individually and on Behalf of Her Minor Son, Jason Heimel
v.
STATE of Louisiana.
No. CA-6161.
Court of Appeal of Louisiana, Fourth Circuit.
March 16, 1987.
Writ Denied June 5, 1987.
*80 Jack A. Tittle, Jr., Metairie, Stephen J. Laborde, New Orleans, for plaintiff.
William J. Guste, Jr., Atty. Gen., Warren E. Mouledoux, Robert E. Redmann; Robert A. Barnett, Asst. Attys. Gen., New Orleans, for defendant.
Before GULOTTA, BARRY and WARD, JJ.
GULOTTA, Judge.
The State of Louisiana appeals from an adverse judgment for injuries sustained by a 10 year old boy who broke his leg in a fall from a tree on State owned property. Alternatively, the State contends that the $20,000.00 general damage award is excessive and should be reduced to no more than $3,000.00. In answer to the appeal, plaintiff seeks an increase to $50,000.00. We affirm.
The accident occurred on July 13, 1981, in a wooded area of State owned land that was part of the Elaine P. Nunez Vocational-Technical School in Chalmette, Louisiana. One of the trees in this location had wooden steps nailed to its trunk that led to a platform or "tree house" wedged higher in its foliage. Hanging near this platform was a length of rope or hose tied to a higher branch and extending down to a distance a few feet above the ground. While playing with some neighborhood children, ten year old Jason Hiemel climbed onto the platform, attempted to reach for the rope to swing on it, but lost his grip and fell more than six feet to the ground, breaking his left femur.
Jason's mother, individually and on behalf of her son, filed suit alleging that the State knew or should have known of the defective and unreasonably dangerous nature of the tree house and swing that had constituted an open and dangerous invitation to minors who were attracted to play on the property. After a trial on the merits, the trial judge held the State liable based on findings that, despite full knowledge of the platform and rope, the State had negligently failed to remove a dangerous condition that had presented a "treat and a danger" to ordinary children. The trial judge further found that Jason was free of contributory negligence, victim fault, or assumption of a known risk, because he had failed to understand the danger confronting him.

LIABILITY
Appealing, the State contends that the trial court misapplied the doctrine of attractive nuisance. The State points out that this doctrine of tort liability applies only where the following elements are present: 1) the injured child is too young to appreciate the danger, 2) there is reason to anticipate children will be attacted to the defendant's premises, 3) the instrumentality causing the injury presents a strong likelihood of an accident, 4) the danger is not ordinarily encountered, and 5) the land owner has failed to take reasonably prudent precautions under the circumstances. According to the State, Jason was of sufficient age, intelligence, and experience to have been aware of the possibility of falling from the tree, and the State had no reason to anticipate that he would venture on its property and injure himself in this typical, wooded tract that presented no extraordinary danger. The State contends that Jason solely caused the accident by failing to exercise reasonable care. We disagree.
In determining a land owner's liability in negligence cases under LSA-C.C. Art. 2315 and 2316, the court must ascertain whether the land owner breached a legal duty imposed to protect against the particular risk involved. The plaintiff's status as a trespasser may have some bearing on the question of liability but is not determinative. Rather, the proper test is whether the land owner has acted as a reasonable man in view of the probability of injury to others in the management of his property. Shelton v. Aetna Casualty & Surety Co., 334 So.2d 406 (La.1976); Cates v. Beauregard Electric Cooperative, *81 Inc., 328 So.2d 367 (La.1976), cert. den. 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976); Barcia v. Estate of Keil, 413 So.2d 241 (La.App. 4th Cir.1982). Under the "attractive nuisance doctrine" a land owner who maintains a condition or instrumentality upon his premises that is dangerous to children of tender years because they are unable to appreciate the peril may be held liable for their injury where there is a strong likelihood of an accident, the presence of children could reasonably be anticipated, and the land owner does not take reasonably prudent precautions for their protection under the circumstances. Saxton v. Plum Orchards, 215 La. 378, 40 So.2d 791 (1949).
Despite the attractive nuisance argument advanced by the State, that issue is not dispositive of the instant case. Rather, under a duty-risk analysis the issue is whether negligence is imputed to the State for permitting the platform and rope in the tree on its property where the presence of children was reasonably foreseeable and their use of the apparatus might result in injury.
John J. Kane, director of the Nunez school, acknowledged that the wooded area of the State's property was part of his responsibility. He testified that he had previously "chased" youngsters out of the area on numerous occasions when they were shooting pellet and BB guns and riding bikes. He also testified that he had posted no-trespassing signs and had called local enforcement deputies repeatedly to eject the children. Kane had also unsuccessfully requested the State Board of Education to allot money to fence the area. Although at trial he denied having ejected anyone for climbing trees, in a pre-trial deposition he had stated that he had chased one boy after neighbors had complained about youngsters climbing trees. Kane had seen a platform in the tree shortly before trial, but testified that he had not paid any attention to it beforehand, although he would have asked the children to leave the area anyway.
George Hallal, a maintenance man for the Nunez school, testified that for over a year prior to the accident he had run children off the wooded area at least two or three times a week, sometimes every day. He testified that he had nailed signs in trees in the area in May, 1981, to keep the children out. Hallal stated that he had seen as many as 12 or 15 kids at once in the area and had told those climbing trees that they were going to get hurt. He acknowledged that it was dangerous for children to play in the trees, but did not remember seeing a tree with a wooden platform and a rope.
Jason testified that he had gone to the wooded area behind the school eleven or twelve times and had climbed the same tree six or seven times before the accident. He stated that he had not seen any signs on the property and had never been chased away. On the date of the accident, he had climbed up the side of the tree on wooden stair steps onto the platform about 8 feet up into the tree. He stated that he would normally grab the swing and then jump off after it stopped swinging, but lost his grip on the occasion of his fall and injury. Jason's testimony was largely corroborated by his older brother, Richard, who witnessed the accident.
Two other neighborhood youngsters also similarly described the tree and rope swing and the absence of any signs. Photographs and a video cassette of the scene taken shortly before trial showed the tree inolved in the accident. Although the wooden platform used by Jason was no longer there, wooden steps and a higher platform were still in the tree.
Jason's mother testified that her son had a learning disability and had encountered reading problems at school. Although she characterized him as a "fairly bright" boy, she testified that two years prior to the accident he had been evaluated as having a "motor coordination problem" that he would outgrow. Documentary evidence of Jason's school records and professional evaluations of him support her testimony.
Applying the law to the facts in the instant case, we conclude that the trial court correctly held the State liable for Jason's injury.
*82 The school officials responsible for maintaining the State property admitted that it was dangerous for children to climb in the trees and that they had unsuccessfully attempted to keep them out of the area many times prior to this accident. The presence of the wooden stair steps, platform, and rope in the tree created an unreasonable risk that unsupervised children would climb the tree and attempt to swing from the rope, and the State knew or should have known of this dangerous condition. The scope of the State's duty to maintain its property encompassed the risk that a child, like Jason, might fall while playing on this rope swing. The State breached its duty by failing to remove the steps, platform, and rope to prevent this readily foreseeable injury. The school officials' unsuccessful attempts to post signs and manually evict the boys from the area were insufficient to discharge this duty. Indeed, the State's knowledge of the persistent problem put it on notice that stricter measures were necessary. There is an ease of association between the State's duty and the injury in this case. See Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972).
In so holding, we distinguish Dunne v. Orleans Parish School Bd., 463 So.2d 1267 (La.1985), where a five year old child suffered injury after wandering into a unlocked school gymnasium and falling from a set of gymnastic rings hanging from a cross beam on the ceiling. In Dunne, the rings had been removed from their position of security at a side wall and older boys had forced the younger child to swing on them against his will. The Supreme Court held that the scope of the School Board's duty did not encompass the risk that the small child would be enticed to employ the rings outside their normal use. The situation in Dunne is unlike that in the instant case where the platform and rope in this tree in the wooded area were obvious and should have been recognized as dangerous conditions. There is an ease of association between the State's duty and the child's injury in the instant case and that was absent in the Dunne case.
We also distinguish Louviere v. Great American Corporation, 183 So.2d 766 (La. App. 1st Cir.1966), relied on by defendant. In Louviere, a 9 year old boy broke his arm after losing his grip while attempting to swing on a vine from the edge of a ravine. In affirming the dismissal of the suit against the defendant property owner, the Louviere court held that the doctrine of attractive nuisance did not apply since the hanging vine was not inherently dangerous and the ravine was not camouflaged or concealed so as to hide the danger to the child. The First Circuit further held that the injured boy had the ability to appreciate the danger of falling into the ravine and knew or should have known that he would sustain some injury if he fell. The facts in Louviere are different from those in the instant case, however, where the wooden platform and rope swing were not a part of the natural landscape and where Jason did not understand the danger confronting him.
The State further relies on a recent decision, Herbert v. City of Kenner, 501 So.2d 901 (La.App. 5th Cir.1987). In Herbert, a minor suffered injury to his eye when hit with a chunk of mud thrown by another boy while they were playing on a mud pile in a municipal playground. In dimissing a third party claim against the City of Kenner, our brothers on the 5th Circuit held that the presence of a mound of mud used to service a baseball diamond on a playground did not create an unreasonable risk of harm sufficient to impose a duty on the City to police the area and that the doctrine of "attractive nuisance" did not apply since the pile of mud was not a "hidden trap" or an "inherently dangerous" instrumentality peculiarly attractive to children. The situation in Herbert is quite different from that in the instant case, however, where a platform and rope swing in a tree in a wooded area frequented by trespassing children does constitute an inherently dangerous condition. Under these circumstances, the Herbert decision is not persuasive in our case.
We further find no error in the trial judge's exoneration of Jason from contributory negligence or assumption of the risk.
Contributory negligence of a child is not measured by adult standards of selfcare; *83 rather, the test is whether the particular child in the particular circumstances indulged in gross disregard of his own safety in the face of a known risk and a danger that he perceived and understood, considering his age, background, and intelligence. Carter v. City Parish Government of East Baton Rouge, 423 So.2d 1080 (La.1972); Dufrene v. Dixie Auto Ins. Co., 373 So.2d 162 (La.1979). The evidence supports the conclusion that Jason, though 10 years old at the time, lacked the intelligence of an average 10 year old, had a history of coordination problems, and failed to understand the danger confronting him. He testified that he was attempting to use the swing as he had several times previously. There is no showing that his conduct under the circumstances was less than that expected of a boy of his limited mental capacity and physical condition.
In this respect, our case is akin to Garison v. Wells, 262 So.2d 820 (La.App. 2nd Cir.1972), where a seven year old who fell from a ladder while attempting to climb into a tree house was found free of contributory negligence since she had not fully realized the dangers involved. Considering the evidence of Jason's earlier learning and coordination problems, and the trial judge's opportunity to view him first-hand on the witness stand, we cannot say the trial court erred in finding Jason free of any degree of fault under these circumstances.
The evidence considered, we find no error in the trial court's conclusion that the State was 100% at fault in this case.

QUANTUM
We further find no basis to disturb the $20,000.00 general damage award.
Jason sustained a displaced fracture of his left femur or thigh bone. A Steinmann pin was inserted through the upper part of his lower leg to suspend the leg so that weights could be applied to align the upper fracture in a satisfactory position. Jason remained in traction for approximately one month after the accident until the bone sufficiently healed. He was then immobilized in a Spica cast on August 14 and discharged from the hospital on August 15. The cast was removed approximately two months later, and he thereafter returned to school, having missed nine weeks of classes.
Corroborated by his mother, Jason testified about his post-injury pain and inconvenience. He also stated that he still limps after exercise or if the weather is rainy or damp.
Dr. Essam Elmorshiddy, the treating orthopedic surgeon, testified that the fracture has healed well and that Jason walks fairly with no limp. Although Jason's left leg is about one-half inch longer than his right and there is a slight curving of the bone because of the fracture, these disparaties do not clinically affect his walking. Dr. Elmorshiddy testified that Jason could tolerate regular activities and he did not see any decreased bone strength or integrity. He acknowledged, however, that the slight curving of the femur might possibly give Jason more tendency toward arthritis in the future. He further stated that Jason's complaints of occasional pain aggravated by a change in the weather are expected and should be temporary.
Considering the injury and the amount of the award, we cannot say the award was either excessive or inadequate. Having so concluded, we affirm the judgment of the trial court.
AFFIRMED.