611 So.2d 931 (1992)
Kristoffer Neal SKELTON, a Minor By and Through his Natural Mother and Next Friend, Linda RODEN
v.
TWIN COUNTY RURAL ELECTRIC ASSOCIATION, Jimmy Wilkerson, Individually, and Jennie Wilkerson, Individually.
No. 90-CA-0523.
Supreme Court of Mississippi.
December 31, 1992.
*933 William R. Armstrong, Jr., Henderson Dantone & Hines, Greenville, for appellant.
Edwin W. Tindall, Lake Tindall Hunger & Thackston, Roy D. Campbell, III, Campbell Delong Hagwood Wade & Stuart, Greenville, for appellees.
En Banc.
PRATHER, Justice, for the Court:

I. INTRODUCTION
This personal injury action arose on the appeal of 9 year old minor plaintiff Kristoffer Skelton, from the April 18, 1990, summary judgment of the Circuit Court of Washington County in favor of defendants Jimmy and Jenny Wilkerson and the Twin County Rural Electric Association. The appellant timely filed a notice of appeal and alleges error in the trial court's summary judgment in favor of the defendants. Specifically, Skelton questions:
A. Whether a fact issue existed as to whether the electric association and/or the Wilkersons owed a duty of care to Skelton.
B. Whether a fact issue existed as to whether the defendants breached a duty to prevent harm to Skelton from a hidden, dangerous condition.
C. Whether a fact issue existed as to whether defendants breached a duty to prevent harm to Skelton from an attractive nuisance.
This Court affirms the trial court's grant of the defendant's motion for summary judgment.

STATEMENT OF THE CASE

A. Facts
Jimmy and Jennie Wilkerson have two children, one of whom is Selena. They live in a home rented from Mr. Wilkerson's employer, Twin county Rural Electric Association, for $35.00 per month. At the time of the accident in question, behind the house, underneath a pecan tree, a three-foot metal pipe attached to a guy wire secured the family's television antenna. The pipe was there when the family moved into this rental house in 1982. Around the pecan tree, Mr. Wilkerson placed landscaping timbers and fill dirt to keep water from collecting. Kris Skelton, his older brother Greg, and their parents, Linda and Charles Roden, lived approximately 75 yards from the Wilkersons. The Skelton and Wilkerson children frequently played together. The Wilkersons had told their children, the Skelton children, and the Skelton children's parents, Linda and Charles Roden, that the trees in their yard were off-limits. On August 13, 1987, after supper, but with daylight outside, while playing chase, Kris Skelton, hanging from a pecan tree branch by his hands, slipped, fell onto the pipe, and badly cut his mouth, resulting in permanent *934 damage. It was light enough to see the pipe.
Mrs. Roden considers her son, physically well-coordinated and able to exercise judgment. A clinical psychologist concluded that Skelton exhibited average academic achievement and judgment for his age and intelligence in the low-average range. Dr. MacVaugh described Skelton as possibly lacking impulse control, a boy to whom the tree served as an enticement.
A professional landscape architect, Glenn Cook, examined photographs and stated by affidavit that the pipe posed an obscure danger, particularly because it lacked a top cap to reduce injury. Cook described the ready availability of less hazardous means of securing the antenna.
Skelton, nine years old at the time of the accident, admitted that he knew not to climb the trees in the Wilkersons yard. His mother, Ms. Linda Roden, had previously instructed him not to climb trees. He had climbed the trees before without the Wilkersons' knowing. He knew of the pipe and knew it could hurt him if he fell on it. Skelton's brother stated by affidavit:
I remember that, before Kris Skelton fell out of the tree, Salina [sic] Wilkerson, Kris, and I had been playing in the tree. Salina [sic] had been sitting in a wire chair up in the tree. Kris and I were sitting on a branch. Later we began to play chase... . We had playing in the trees after we were told not to and Mrs. Wilkerson complained to us about it. Salina [sic] and I had put mattresses in a pecan tree to use as a tree house.
On the day of the accident, when Jennie Wilkerson would go outside, the children climbed out of the tree so she would not catch them. When Ms. Wilkerson went back inside, the children returned to playing in the tree. To Skelton, the tree he was climbing did not have any special characteristics distinguishing it from other nearby trees.

B. Procedural History
On October 19, 1988, Skelton sued the electric association and the Wilkersons. Skelton alleged that, within an area used by the children for recreation, the defendants "failed to provide adequate protection, safeguards, warnings, or barriers to entry to the tree above the guywire pipe by young children." Skelton alleged that the defendants "knew, or should have known" of the attraction created by the tree "in the vicinity of other recreational areas immediately adjacent" and that "the attraction provided the the tree with branches extending over a 3 1/2 foot, unguarded pipe protruding from the ground, created an unreasonable hazard, danger or threat of injury to children of tender years." Skelton prayed for a jury trial, a judgment of $175,000 against each defendant, and costs.
The electric association admitted owning the property on which the accident occurred and admitted Jimmy Wilkerson's employment with the association, but denied liability. The association contested the accuracy of Skelton's description of the property it owned. Separately, the Wilkersons admitted the association's ownership of their house, but denied that they occupied all of the alleged association property described by Skelton. The Wilkersons admitted that the association required Jimmy Wilkerson to be on call. The Wilkersons admitted that, underneath a tree in the backyard stood a metal pole with a guywire that secured an antenna. They also admitted that the children played in the pecan orchard north of their home. The association further:
denies that it was negligent in any manner which proximately caused or contributed to the injury of plaintiff herein and denies any legal duty, under the circumstances, to plaintiff, since it was not in possession of the premises at the time of the alleged incident, said premises being leased to Jennie and Jimmy Wilkerson for good and valuable consideration, and under circumstances by which defendant is not liable for any defects or negligence, if any, existing on or respecting the subject premises... . The sole proximate cause of the plaintiff's injuries was negligence by parties other than this defendant, and for whom defendant is not legally liable.
*935 In defense, the Wilkersons asserted assumption of risk, comparative negligence, and the negligence of Skelton's mother and others.
On February 22, 1990, the association moved for summary judgment pursuant to rule 56 of the Mississippi Rules of Civil Procedure, alleging that the association "had no knowledge that [Skelton] was on the premises and in fact had neither the opportunity to control the access to or conduct by said minor on the property." The Wilkersons also moved for summary judgment, acknowledging that the tree and pipe were situated in their yard, under their control. The Wilkersons alleged, however:
Prior to the day of the accident the Plaintiff had been admonished by the Wilkersons not to play in any of the trees on the surrounding property, including the subject pecan tree. The Plaintiff under stood that warning and, although he occasionally climbed the trees in violation of that rule, he always made a point not to get caught.
The Wilkersons described Skelton as a social guest who knew of the open and obvious pipe and the rule not to climb trees in the yard. The Wilkersons denied any knowledge of the children's playing in the tree that day.
In its April 13, 1990, ruling the court found Skelton to have been a social guest and, therefore, a licensee to whom the host owed a duty to avoid wanton injury and a duty to warn of hidden danger. The court found the pipe to have been plainly visible and no danger but for Skelton's climbing the tree. The court found that the tree was not an attractive nuisance because it occurred naturally and did not, itself, attract Skelton to the premises. Finding no breach of duty, the court granted summary judgment to the Wilkersons. The court also granted summary judgment to the electric association holding that the association exercised no dominion or control over the premises leading to liability.

II. LEGAL ANALYSIS

Standard of review
In this appeal, Skelton contends the trial court failed to grant him the benefit of favorable inferences in its assessment of facts, and so inappropriately granted summary judgment to the defendant.
A party moving for summary judgment challenges the legal sufficiency of the claim. Miss.R.Civ.P. 56 Comment. Under Mississippi law, the trial court ruling on a motion for summary judgment takes as true any well-pleaded allegations and defenses. The court reviews all admissions, answers to interrogatories, depositions, affidavits, and any other evidence, viewing the evidence in a light most favorable to the non-movant. McFadden v. State, 580 So.2d 1210, 1213-14 (Miss. 1991). The movant and non-movant bear the burdens of production corresponding to the burdens of proof they would bear at trial. Palmer v. Biloxi Regional Medical Center, Inc., 564 So.2d 1346, 1355 (Miss. 1990). The movant must persuade the trial court that no genuine issue of material fact exists, and that the existing facts warrant judgment for the movant as a matter of law. The movant must produce significant, probative evidence to support the motion, and neither party may rely upon mere allegations or denials. Id. at 1355-56. The court will then grant a motion for summary judgment if the court determines, beyond a reasonable doubt, that the plaintiff would not be able to prove any facts supporting his claim. McFadden, 580 So.2d at 1213-14. On appeal, this Court reviews de novo the trial court's disposition of a summary judgment motion. McFadden, 580 So.2d at 1214.

A. Whether a fact issue existed as to whether the electric association or the Wilkersons owed a duty of care to Skelton.
Skelton's relationship to the association and the Wilkersons governs the duty of care they might have owed him. Skelton alleges that the association breached its duty of reasonable care not to injure the plaintiff in the status of an invitee, as a social guest of the daughter of its employee, also an invitee, whose occupancy was *936 incidental to and dependent on employment of Jimmy Wilkerson.
To prove negligence, the plaintiff must show, by a preponderance of the evidence: duty, breach of duty, proximate cause, and damages. May v. V.F.W. Post No. 2539, 577 So.2d 372, 375 (Miss. 1991); Palmer, 564 So.2d at 1355. The duty owed by a defendant to a plaintiff depends upon their relation to one another.
As for the status of the parties in an action such as this:
[A]n invitee is a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage. A licensee is one who enters upon the property of another for his own convenience, pleasure or benefit pursuant to the license or implied permission of the owner whereas a trespasser is one who enters upon another's premises without license, invitation or other right.
Payne v. Rain Forest Nurseries, Inc., 540 So.2d 35, 37 (Miss. 1989) (citing Hoffman v. Planters Gin Co., 358 So.2d 1008, 1011 (Miss. 1978)); see also Lucas v. Buddy Jones Ford Lincoln Mercury, Inc., 518 So.2d 646, 647 (Miss. 1988). A landowner owes a licensee only the duty to refrain from willfully or wantonly injuring the licensee, unless the landowner engages in active conduct and knows of the licensee's presence. A landowner owes a business invitee a duty of reasonable care for the invitee's safety. 518 So.2d at 648; compare Wright v. Caffey, 239 Miss. 470, 477, 123 So.2d 841, 844 (1960) ("invited" social guest is not invitee); see also Adams v. Fred's Dollars Store of Batesville, 497 So.2d 1097, 1101 (Miss. 1986); Hughes v. Star Homes, Inc., 379 So.2d 301 (Miss. 1980).
In Lucas, where the plaintiff fell while picking up her son from her husband's workplace, the Court accorded her the status of licensee. Lucas visited the premises for no business purpose and only for her convenience, and the business "derived no benefit from her visit." 518 So.2d at 647-48; see also Payne, 540 So.2d at 38 (visitors after business hours held status of licensees, not business invitees); Dry v. Ford, 238 Miss. 98, 101-02, 117 So.2d 456, 458 (1960) (plaintiff suffering injury while working on his own car in a another's service station was licensee, since "inviter's duty and corresponding liability for breach of duty are measured and limited by the nature of the invitation held out to the invitee").
Skelton raises the issue of whether the power association maintained dominion and control over the property on which the accident occurred. The association alleged, in its answer to the complaint, that it bore no legal duty because it did not possess the premises in question. Regarding the relationship between parties to a lease, a lease "operates as a demise or conveyance of the property" for the specified time period; it leaves the landlord with no right of possession or use unless the landlord expressly reserves such a right. Hurst v. English, 357 So.2d 132, 134 (Miss. 1978); Standard Fruit & Steamship Co. v. Putnam, 290 So.2d 612, 615 (Miss. 1974). A landlord does not ordinarily bear liability for injury to a third party resulting from defects in the demised premises. Floyd v. Lusk, 190 So.2d 451, 452-53 (Miss. 1966). See, generally, 49 Am.Jur.2d §§ 55, 56, Landlord and Tenant (a party's residence may arise from landlord-tenant relationship or employer-employee relationship).
Skelton, as a social guest, held the status of licensee. He entered the property for his own pleasure, with no exchange of mutual business benefit with the Wilkersons. Skelton devotes significant attention to the question of whether the Wilkersons occupied their premises in an employer-employee capacity instead of in a landlord-tenant relationship. Through the association's relationship with the father, through the father's relationship with the daughter, through the daughter's invitation to Skelton, Skelton seeks to establish himself as an invitee to premises over which the electric association, as well as the Wilkersons, exercised control. The fact remains, however, that due to the purpose of Skelton's visit, he cannot have been more than a *937 licensee, owed only a duty of freedom from wanton and willful injury.

B. Whether a fact issue existed as to whether the defendants breached a duty to prevent harm to Skelton from a hidden, dangerous condition.
Skelton argues that a jury could have found the metal pipe to be a hidden, dangerous condition to children of his age, experience, judgment and intelligence, and that the appellees failed to exercise reasonable care to see that Skelton was aware of the danger or to remedy the condition. Skelton further contends that whether the Wilkersons' general warning not to climb trees satisfied their duty to warn should have gone to the jury.

Hidden danger, generally
The law of hidden danger applicable to licensees springs from the rule that a licensee may expect only that a possessor of premises will refrain from willful or wanton injury. Willful and wanton conduct exceeds "mere inadvertence or lack of attention" characteristic of ordinary negligence, and means that the possessor consciously disregards a known, serious danger. Dry v. Ford, 238 Miss. 98, 102, 117 So.2d 456, 458 (Miss. 1960). Consistent with that general rule, the rule of hidden danger requires the possessor of premises "not to set traps for [a licensee] by exposing him to hidden perils." Marlon Investment Co. v. Conner, 246 Miss. 343, 353, 149 So.2d 312, 315 (Miss. 1963). Thus, the possessor of land owes a licensee no duty to maintain land in a safe condition, but only "to disclose to the licensee any concealed, dangerous conditions on the premises of which the owner has knowledge, and to exercise reasonable care to see that the licensee is aware of the danger." 149 So.2d at 316.
In this state, the question of children's capacity to perceive danger has arisen in the context of contributory negligence and attractive nuisance questions. Instructively, this court has held that the attractive nuisance doctrine does not apply to obvious, natural dangers; an occupant may assume that a child's guardians will have warned the child about readily apparent dangers. McGill v. City of Laurel, 252 Miss. 740, 173 So.2d 892, 898 (Miss. 1965); see also Gordon v. C.H.C. Corp., 236 So.2d 733, 735 (Miss. 1970) (child should be aware of danger of falling from a height); Restatement (Second) of Torts § 339.
Some jurisdictions have established a special foreseeability rule for injury to a minor caused by a dangerous condition on the premises: the possessor of the premises bears the duty to protect against injuries where the possessor knows or should know minors frequent the premises and where a dangerous condition on the premises could cause injury. The possessor bears no duty, however, where the minor generally would be expected to understand and avoid an obvious risk present in a dangerous or defective condition. See Barrett v. Forest Preserve Dist. of Cook County, 228 Ill. App.3d 975, 171 Ill.Dec. 170, 173, 593 N.E.2d 990, 993 (1992) (sixteen-year-old in wet shoes should have known not to swing on 30-foot rope over deep ravine); Sampson by Sampson v. Zimmerman, 151 Ill. App.3d 396, 104 Ill.Dec. 349, 502 N.E.2d 846, 848 (1986) (no duty where child "allowed to be at large" would understand, appreciate, and avoid obvious risk); cf. Bell v. City of Bay St. Louis, 467 So.2d 657 (Miss. 1985) (city bore non-delegable duty to maintain reasonably safe sidewalks; fact that debris was open and obvious would not necessarily exonerate city).
Contributory negligence doctrine also subsumes the question of a child's capacity to perceive danger. Over a hundred years ago, in Mayor of Vicksburg v. McLain, 67 Miss. 4, 14, 6 So. 774, 775-76 (1889), this Court examined a case in which the defendant had allowed a hill near a playground to be cut away, leaving a 30-foot, ungraded bluff, which collapsed on and killed an eight-year-old child. The court held that, due to presumed incapacity, a child of tender years could not exercise judgment and discretion. The Court noted that the presumption could be rebutted by proving "exceptional capacity" and a capability of exercising judgment and discretion. 67 Miss. at 14, 6 So. at 776. See also Coleman v. *938 Associated Pipeline Contractors, Inc., 444 F.2d 737, 739 (5th Cir. [Miss.] 1971); Glorioso v. Young Mens Christian Ass'n of Jackson, 556 So.2d 293 (Miss. 1989) ("exceptional capacity" supports contributory negligence and rebuts presumption of non-negligence in child between ages of 7 and 14).

Application
In this case, no hidden danger existed. The metal pipe stood in open view. Since hidden-danger analysis does not apply, the analysis consists of determining whether the appellees' fulfilled their duty to Skelton as licensee. They did, since they refrained from wanton and willfully injuring him.
The issue is not whether the pipe was dangerous. By itself, the pipe posed no danger to persons walking past. The issue is whether climbing the tree with knowledge that the pipe was there was dangerous. Thus, regardless of whether Skelton had been warned about the pipe, he admitted he knew not to climb the trees and that, when he did so, he sought to avoid being discovered by adults.
The next question, then, is whether Skelton's minor status imposed a higher duty on the defendants, that is, whether Skelton could have understood and appreciated the danger of climbing trees. Borrowing from the reasoning of attractive nuisance cases, Skelton should have understood that he could hurt himself climbing trees. The fact of his admission supports such a legal conclusion.
Citing Bell, Skelton argues that the question of whether a condition is open and obvious typically falls to the jury "in all except the clearest of cases." That case, however, dealt with a defendant under the burden of a non-delegable duty of reasonable care. In this case, the defendants owed only a duty to refrain from willful and wanton injury to Skelton.
The facts of this case uncontrovertedly show that Skelton understood the hazard and acknowledged that he had been told not to climb trees. He surreptitiously did so, knowing the Wilkersons and his mother would reprimand him. With no hidden danger and no duty owed beyond that of an occupier to a licensee, the facts and law reveal that the court appropriately granted summary judgment. With no breach of duty by whomever bore responsibility for the property, it becomes moot as to whether the association shared responsibility with the Wilkersons.

C. Whether a fact issue existed as to whether defendants breached a duty to prevent harm from an attractive nuisance.
Skelton contends a fact issue exists as to whether the tree, surrounding timbers and fill dirt, and pipe, together, constituted an artificial condition and attractive nuisance. Skelton concedes that the attractive nuisance doctrine applies only to trespassers, and argues that he became a trespasser when he climbed the tree.
This Court has held that, absent special circumstances, the attractive-nuisance doctrine applies to inherently dangerous instrumentalities such as railroad turntables, explosive devices and electrical conduits. Hughes v. Star Homes, Inc., 379 So.2d 301, 305 (Miss. 1980) (en banc). Without such facts, the question of liability properly resided with the trial court, not the jury. Id. Further, this court has held that the attractive nuisance doctrine does not apply to obvious, natural dangers; an occupant may assume that a child's guardians have warned the child about readily apparent dangers. McGill v. City of Laurel, 173 So.2d 892, 898 (Miss. 1965); see also Gordon v. C.H.C. Corp., 236 So.2d 733, 735 (Miss. 1970) (child should be aware of danger of falling from a height); Restatement (Second) of Torts § 339.
In the Florida case of Cassel v. Price, 396 So.2d 258, 262-63 (Fla.Ct.App. 1981), a child fell from a schoolyard mulberry tree, struck his head on concrete fill material beneath the tree, and died. The court addressed the issue of a tree as an attractive nuisance. The court cited 59 A.L.R. 848, "Trees or Shrubs as Attractive Nuisance" to support its observation that trees, "when considered alone or in combination with other circumstances, (with exception *939 of electrical wires running through the trees) cannot be the basis for imposition of liability based upon the attractive nuisance doctrine." See also Mullins v. Pannell, 289 Ala. 252, 266 So.2d 862 (1972); Salter v. Deweese-Gammill Lumber Co., 137 Miss. 229, 240, 102 So. 268, 270 (1924) (alleged nuisance must be unusually alluring and deceptively attractive to children); McComb City v. Hayman, 124 Miss. 525, 536, 87 So. 11, 12 (1921) (attractive nuisance must have been artificially created).
Skelton argues that, once he climbed the tree, he became a trespasser instead of a licensee, raising a material fact of attractive nuisance. This assertion ignores the fact that, regardless of Skelton's status, another element must be present: the tree must have been an attractive nuisance. Relying on the testimony of a psychologist and landscape architect, Skelton asserts that the tree attracted him. But whether or not he found the tree appealing to climb has no bearing on the legal doctrine of attractive nuisance, which this Court has reserved for inherently dangerous, created instrumentalities. The trial court properly granted summary judgment on the issue of attractive nuisance. Again, having disposed of crucial element of whether an attractive nuisance existed, it becomes unimportant to determine which defendant might have controlled it.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN LEE, P.JJ., and PITTMAN, J., concur.
BANKS, J., dissents by separate written opinion, joined by SULLIVAN and McRAE, JJ.
ROBERTS, J., not participating according to Supreme Court Internal Rules.
BANKS, Justice, dissenting:
Today's majority has validated the issuance of summary judgment to defendants Twin County Rural Electric Association, Jimmy Wilkerson, and Jennie Wilkerson by the Washington County Circuit Court. I believe this result to be in error. My reasons for dissenting go beyond this result, however. They extend to the mode of analysis which produced it. The majority applied the traditional common law distinctions between licensees and invitees to determine the scope of the duty that Defendants owed to plaintiff Kristoffer Shelton. Kristoffer Shelton was placed in the "licensee" box, and unluckily for him, that box carries with it a narrow conception of the duty upon owners and occupiers of land to avoid injury to entrants upon that land. Consequently, we find ourselves with a result that is both harsh and unrealistic but certainly not atypical of the licensee-invitee dichotomy. Therefore, I dissent from today's result and the continued application of the system which bases the duty owed by owners and occupiers of land solely upon the labels affixed to persons who come upon their property.
The general rule of negligence law is that individuals are required to use ordinary care to prevent others from being injured as the result of their conduct, and they are held liable for injuries which result from their failure to take actions that we would expect of a reasonable man under like circumstances. Restatement (Second) of Torts § 283 (1965). Courts have traditionally departed from this general standard when the issue has been what duty is owed by an owner or occupier of land to persons who enter upon that land. Instead, they have conditioned the duty upon the status of the entrant as either a trespasser, licensee or invitee.
A "licensee" has been defined as one who enters upon the land of another for his own convenience, pleasure, or benefit, pursuant to the license or implied permission of the owner. Lucas v. Buddy Jones Ford Lincoln Mercury, 518 So.2d 646, 647 (1988). A landowner only owes a licensee the duty to refrain from willfully or wantonly injuring him. Lucas v. Mississippi Housing Authority No. 8, 441 So.2d 101, 103 (1983). An "invitee", on the other hand, is a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage. Lucas v. Buddy *940 Jones Ford Lincoln Mercury at 647. Owners and occupants owe these persons the duty to keep their premises in a reasonably safe condition and to warn of dangerous conditions not readily apparent, of which the owner or occupant knew, or in the exercise of reasonable care, should have known. Long Term Care, Inc. v. Jesco, Inc., 560 So.2d 717, 721 (Miss. 1990).
The United States Supreme Court noted the origins of these distinctions in Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). There, it said:
The distinctions which the common law draws between licensee and invitee were inherited from a culture deeply rooted to the land, a culture which treated many of its standards to a heritage of feudalism. In an effort to do justice in an industrialized society, with its complex economic and individual relationships, modern common-law courts have found it necessary to formulate increasingly subtle verbal refinements, to create subclassifications among traditional common-law categories, and to delineate fine gradations in the standards of care which the landowner owes to each. Yet even within a single jurisdiction, the classifications and subclassifications bred by the common law have produced confusion and conflict. As new distinctions have been spawned, older ones have become obscured. Through this semantic morass the common law has moved, unevenly and with hesitation, towards imposing on owners and occupiers a single duty of reasonable care in all circumstances.
358 U.S. at 630-631, 79 S.Ct. at 410, 3 L.Ed.2d at 554-555. The Supreme Court went on to hold in Kermarec that these distinctions between licensees and invitees were inappropriate in maritime law. 358 U.S. at 631-32, 79 S.Ct. at 410, 3 L.Ed.2d at 555. Instead, it held that an owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case. Id.
Since Kermarec, there has been a strong trend towards abolishing the licensee-invitee distinction. See Annotation, Modern Status of Rules Conditioning Landowner's Liability Upon Status of Injured Party As Invitee, Licensee, or Trespasser, 29 A.L.R.4th 294 (1983). A number of jurisdictions have squarely rejected the use of any of the common-law status classifications as determinative of liability. See, e.g., Webb v. Sitka, 561 P.2d 731 (Alaska 1971); Rowland v. Christian, 69 Cal.2d 108, 70 Cal. Rptr. 97, 443 P.2d 561 (1968); Mile High Fence Co. v. Radovich, 175 Colo. 537, 489 P.2d 308 (1971); Smith v. Arbaugh's Restaurant, Inc., 152 U.S.App. DC, 469 F.2d 97 (1972); Alston v. Baltimore & O.R. Co., 433 F. Supp. 553 (DC 1977) (applying District of Columbia law); Kermarec v. Compagnie Generale Transatlantique, supra; Cates v. Beauregard Electric Cooperative, Inc., 328 So.2d 367 (La. 1976); Ouellette v. Blanchard, 116 N.H. 552, 364 A.2d 631 (1976); Basso v. Miller, 40 NY.2d 233, 386 NYS.2d 564, 352 N.E.2d 868 (1976); Mariorenzi v. Joseph Di Ponte, Inc., 114 R.I. 294, 333 A.2d 127 (1975); Melerine v. State, 505 So.2d 79 (La. App. 4th Cir.1987); Singleton v. Charlebois Construction Co., 690 S.W.2d 845 (Mo. App. 1985); and Berge v. Boyne USA, Inc., 779 F.2d 1445 (9th Cir.1986) (applying Mont. law).
A number of other jurisdictions have abolished the distinction between licensee and invitee while retaining the significance of an entrant's status as a trespasser. See, e.g., Wood v. Camp, 284 So.2d 691 (Fla. 1973); Camp v. Gulf Counties Gas Co., 265 So.2d 730 (Fla. Dist. Ct. App. 1972); Poulin v. Colby College, 402 A.2d 846 (Me. 1979); Peterson v. Balach, 294 Minn. 161, 199 N.W.2d 639 (1972); O'Leary v. Coenan, 251 N.W.2d 746 (N.D. 1977); and Antoniewicz v. Reszcynski, 70 Wis.2d 836, 236 N.W.2d 1 (1975). Hutchison v. Teeter, 687 S.W.2d 286 (Tenn. 1985); Hudson v. Gaitan, 675 S.W.2d 699 (Tenn. 1984); Butler v. Acme Markets, Inc., 89 N.J. 270, 445 A.2d 1141 (1982). Ironically, even Great Britain, the country of the common law's birth, has abandoned this system. It did so by the *941 passage of the "Occupier's Liability Act of 1957". 5 & 6 Eliz. 2 Ch. 31.
There are a number of compelling reasons for why the licensee-invitee distinction should be abandoned. In Mile High Fence Company v. Radovich, 175 Colo. 537, 489 P.2d 308 (1971), the Colorado Supreme Court stated that it was compelled to act towards abolishing the common law system, because "(1) that system creates confusion and judicial waste and (2) that by preventing the jury from applying changing community standards to a landowner's duties, a harshness which is inappropriate to a modern legal system is preserved." 489 P.2d at 311-312. The California Supreme Court noted in the seminal case of Rowland v. Christian, 69 Cal.2d 108, 70 Cal. Rptr. 97, 443 P.2d 561, that application of the common law rules was difficult and often arbitrary, unrealistic, inelastic, and confusing. 443 P.2d at 567. In addition, it seemed to capture the essence of the problem when it stated:
A man's life or limb does not become less worthy of protection by the law nor a loss less worthy of compensation under the law because he has come upon the land of another without permission or with permission but without a business purpose. Reasonable people do not ordinarily vary their conduct depending upon such matters, and to focus upon the status of the injured party as a trespasser, licensee, or invitee in order to determine the question of whether the landowner has a duty of care, is contrary to our social mores and humanitarian values. The common law rules obscure rather than illuminate the proper considerations which should govern determination of the question of duty.
443 P.2d at 568.
As courts have recognized these problems with the common law trichotomy, there has been a steady progression towards the use of the generally-applicable "reasonable person under like circumstances" standard in this context. 22 A.L.R.4th. 294, 299. The focal point for judging the prudence of the landowner's conduct is shifted from the circumstances upon which persons enter the owner's property to the foreseeability of harm to others. E.g., Rowland, 70 Cal. Rptr. at 104, 443 P.2d at 568; Basso v. Miller, 40 N.Y.2d 233, 386 N.Y.S.2d 564, 568, 352 N.E.2d 868, 872 (1976); and 22 A.L.R.4th 294, 299. The circumstances surrounding a person's presence on the property are still relevant, because they affect the foreseeability that harm might accrue to that person. E.g., Basso, 386 N.Y.S.2d at 568, 352 N.E.2d at 872. Those circumstances are simply not totally dispositive of the issue of liability. Id.; Rowland, 70 Cal. Rptr. at 104, 443 P.2d at 568. The goal of this test is to bring into consideration all those factors that bear on the reasonableness of a landowner's behavior under a given set of circumstances. E.g., Basso, 386 N.Y.S.2d at 568, 352 N.E.2d at 872. Thus, concerns like the seriousness of the injury, the burden of avoiding the risk, and contributory negligence all have a part to play in the analysis. Id.
Applying the reasonableness test to the instant case, it can hardly be said that there is no genuine issue of material fact left to be resolved by a jury. At the time Kristoffer Skelton was injured, he was an eight-year-old child who resided in a house approximately seventy-five yards from the Wilkerson's home. He and his brother were playmates of the Wilkerson children. They frequently played with the Wilkerson children in the yards of both families. They had climbed the trees in the Wilkerson's front yard on several occasions to the knowledge of Mr. and Mrs. Wilkerson. The children had been threatened with punishment for continuing to play in the tree. It is clear that they continued to do so, though. Under one of the trees, there was a pipe with an unprotected, jagged top edge, which was used to secure a television antenna wire.
This is practically all the information we have before us at the present time regarding the facts and circumstances of Kristoffer Skelton's fall to injury. This is certainly not enough information on which to base a judgment that the Defendants' inaction was conclusively reasonable. There is no determination of whether, despite repeated *942 orders not to be play in the tree, it was foreseeable that eight-year old Kristoffer Skelton might disobey those orders and continue to climb the tree. There has been no determination of whether, if he were to climb the tree, what was the likelihood that he would injure himself by falling on the pipe. There has been no determination regarding the magnitude of the harm that could be expected from one of the children falling on the pipe or running into the pipe whether or not the tree was not involved. There has been no determination regarding the magnitude of the burden that Defendants would have had to incur to take steps to lessen the possibility of injury. Any inquiry into possible negligence without consideration of these issues is patently incomplete and arbitrary. If decisions like this are the end-product of using the common-law distinctions, then it in itself is the quintessential example of the shortcomings of the common-law system.
For the foregoing reasons, I dissent.
SULLIVAN and McRAE, JJ., join this opinion.