liKNOLL, Judge.
The plaintiff appeals from an adverse jury verdict in which the defendants/landowners were absolved of liability for injuries a six-year-old child received when he fell from a tree and struck his head and his left wrist on a piece of farm equipment parked beneath the tree.
Angela Burke (Mrs. Burke) individually and as the mother of the minor, Christopher Ross Fontenot (Christopher), sued Elmand and Euna Fontenot (the Fontenots), the landowners, and their liability insurer, Louisiana Farm Bureau Casualty Insurance Company (Farm Bureau). The jury found that the Fontenots were not guilty of fault which was a legal cause of the accident. A judgment was signed in accordance with the jury verdict. Mrs. Burke’s post-verdict motions for judgment notwithstanding the verdict and for a new trial were denied.
_J|Mrs. Burke contends on appeal that: (1) the trial judge erred in allowing irrelevant testimony which prejudiced the jury against her; (2) the jury verdict was contrary to the law and evidence presented as it pertains to the fault of the plaintiffs and the defendants; (3) the jury verdict was contrary to the law and evidence as it relates to the landowner immunity statutes; and, (4) the trial judge erred in denying her motions for judgment notwithstanding the verdict and for a new trial. We affirm. Because of our disposition of assignments of error one and two, we do not have to reach the merits of the remaining arguments.
FACTS
On September 19, 1993, Christopher, who was six years of age at the time, injured his head, left eye, and left arm when he fell from a tree on the Fontenots’ property while he was visiting his maternal grandparents, Roy and Mary Armand, for the weekend. At the time of the accident, Christopher, his mother, and his brother, James, lived in Rapides Parish. The Armands live on the outskirts of Ville Platte and are the Fontenots’ neighbors. The tree that Christopher fell from was on a wooded portion of the Fontenots’ property. The wooded area was not located close to the Fontenots’ home or the grocery store they operated in the neighborhood.
The accident occurred when Christopher’s older brother James, who was eight years of age at the time, led him and several friends to a “camp” that the neighborhood boys had in the woods on the Fontenot property. The “camp” consisted of a small area cordoned off with string; in the middle of the roped off area were two piles of twigs and branches piled on the ground. This was Christopher and James’s first visit to the “camp.”
Christopher testified that he and his brother climbed into, a portable water tank wagon that was parked in the wooded area. The water wagon was used as a farm | gimplement by the Fontenots to water crops. Christopher and his brother then climbed a “chicken tree” that was next to the water wagon. Christopher, who was the first one into the tree, fell when a small branch of green wood snapped under his weight. He struck his head and left wrist on a metal skid that protruded/from the water wagon.
The Armands immediately brought Christopher to Ville Platte Regional Hospital where his injuries were evaluated and his condition stabilized. From there Christopher was transported to Lafayette General Hospital. At Lafayette General, Dr. Luiz C. *1056 De Araujo, a neurosurgeon, surgically repaired Christopher’s fractured skull. While Christopher was anesthetized, Dr. Darrell L. Henderson, a plastic surgeon, removed broken bones above Christopher’s left eye and inserted a small metal plate as part of reconstructive surgery. Sometime later, Dr. John P. Sehutte, an orthopedist, set Christopher’s left wrist and applied a plaster cast.
Although Christopher suffered eye problems associated with trauma to the optic nerve and had to have a non-dissolved stitch removed from his forehead after his release from Lafayette General, he recovered well from his injuries. At the time of trial, Christopher was released from all medical care.
EVIDENTIARY RULING
Mrs. Burke first contends that the trial judge erred in allowing the jury to hear testimony of where she was at the time of the accident, with whom she was with, and what she was doing. In particular, she complains that the jury learned that at the time of the accident' she had a group of friends at her Alexandria apartment to watch a Saints football game. She argues that this irrelevant testimony led the jury to punish her for its poor perception of her.
It is axiomatic that testimony not objected to at the trial may not form the basis of an assignment of error on appellate review. La. Code Civ.P. art. 1635. Our review Uof the record shows that the only aspect of the testimony objected to was the limited testimony about there being a -football party. After carefully reviewing the record as a whole, we cannot say that such testimony was not relevant, since Mrs. Burke testified under direct examination that she was at home in Alexandria with friends at the time of the accident. Even if this testimony was not relevant, we cannot say that such evidence would have tainted the jury’s .only answer on the jury interrogatory form that the Fontenots were not. guilty of any fault that was the cause of the accident.
Moreover, in our review of the whole record, we find that the testimony portrayed Mrs. Burke as a caring, concerned mother who was genuinely interested in her two sons. The record further shows that Christopher and his brother enjoyed visits with their grandparents and were visiting at the time of the accident because they had not seen each other for several weeks. Therefore, we do not find that the isolated line of questioning that Mrs. Burke complains of poisoned the jury’s perception of her and it surely was not the determinative factor in the decision not to impose liability on the Fontenots.
JURY VERDICT: LIABILITY
Mrs. Burke contends that the jury determination that the Fontenots were not liable was contrary to the law and the evidence. She first argues that the wooded area and the water wagon were an attractive nuisance.
Under the attractive nuisance doctrine a land owner who maintains a condition or instrumentality upon his premises that is dangerous to children of tender years because they are unable to appreciate the peril, may be held liable for their injury where there is a strong likelihood of an accident, the presence of children could reasonably be anticipated, and the land owner does not take reasonably prudent [5precautions for their protection under the circumstances. Melerme v. State, 505 So.2d 79 (La.App. 4 Cir.), writ denied, 507 So.2d 226 (La.1987).
Unless a hidden trap or inherently dangerous instrumentality peculiarly attractive to children exists, there can be no application of the attractive nuisance doctrine. Louviere v. Great American Corporation, 183 So.2d 766 (La.App. 1 Cir.1966). Furthermore, not every instrument possibly dangerous to a child of tender years or which that child might be attracted to constitutes an attractive nuisance. Nguyen v. Crescent Land & Development, 527 So.2d 456 (La. App. 5 Ciri), writ denied, 532 So.2d 769 (La.1988).
In the ease sub judice, we find nothing inherently dangerous in either the tree, the water wagoh, or the combination of the two. There was nothing peculiar about the particular “chicken tree” that Christopher climbed. It was simply one of many in the small woods located on the Fontenot proper *1057 ty. Likewise, we hasten to point out that Christopher testified that he did not know that the water wagon was in the thicket. Moreover, the evidence is unrefnted that the water wagon neither drew the attention of the children to the property nor caused the accident. The fall was caused when a limb, too small to support Christopher, broke under his weight. Accordingly, we do not find that the doctrine of attractive nuisance was applicable to the present facts.
We will next turn our attention to the question of whether the jury properly disposed of the merits of this case on a general negligence theory. In negligence cases under La.Civ.Code arts. 2315 and 2316 involving a land owner’s liability, the court must ascertain whether the land owner breached a legal duty imposed to protect against the particular risk involved. The plaintiffs status as a trespasser may have some bearing on the question of liability, but is not determinative. Rather, the proper latest is whether the land owner has acted as a reasonable man in view of the (probability of injury to others in the management of his property. Shelton v. Aetna Casualty & Surety Co., 334 So.2d 406 (La.1976).
The record shows that there were a number of young children in the neighborhood near the property in question. There was also testimony from the neighborhood children that older boys had “constructed” the “camp” and had frequented it off and on during the preceding summer months. However, the record preponderates that Christopher and his brother had not been to the “camp” before the day of the accident. Despite the testimony that the “camp” had been in existence, the testimony of Mrs. Fontenot, the Armands, and other neighboring parents was unanimous that none of them had knowledge of any children going to the “camp” in the wooded portion of the Fontenot property. In particular, Mrs. Fontenot[1] testified that although she told neighborhood children to stay off of the property because they had been riding three and four-wheelers on their property, she had no knowledge that the “camp” even existed.
In light of this evidence and the unrefuted testimony that farmers in the community regularly store idle farm implements out of the way under trees along their property, we cannot say that the jury was manifestly erroneous in finding that the Fontenots were not liable for Christopher’s injuries. No facts were presented to the jury that would show that the Fontenots had a duty not to use their land in the manner in which they did or that their use of their property posed an unreasonable risk of harm.
In making this determination, we contrast the facts of the present case to those presented in Melerine, 505 So.2d 79, to highlight our finding that the jury’s ^resolution of liability was eminently correct and reasonable. In Melerine, a ten-year-old boy broke his leg when he fell from a tree platform located on a wooded area adjacent to a state-owned school; the state owned the wooded area as well as the school property. The reported decision shows that the director of the school where the tree platform was located knew that neighborhood children climbed trees in the area; he had chased children away before, had unsuccessfully posted no-trespassing signs, and had repeatedly called local law enforcement to eject the children. A state-employed grounds keeper had like knowledge. In finding liability, the Fourth Circuit stated:
The school officials responsible for maintaining the State property admitted that it was dangerous for children to climb in the trees and that they unsuccessfully attempted to keep them out of the area many times prior to this accident. The presence of the wooden stair steps, platform, and rope in the tree created an unreasonable risk that unsupervised children would climb the tree and attempt to swing from the rope, and the State knew or should have known of this dangerous condition. The scope of the State’s duty to maintain its property encompassed the risk that a child ... might fall while playing on this rope swing. The State breached its duty by failing to remove the steps, *1058 platform, and rope to prevent this readily foreseeable accident. The school officials’ unsuccessful attempts to post signs and manually evict the boys from the area were insufficient to discharge this duty. Indeed, the State’s knowledge of the persistent problem put it on notice that stricter measures were necessary. There is an ease of association between the State’s duty and the injury in this case.
Melerine, 505 So.2d at 82.
Looking at the case sub judice, there was no construction like the tree platform and the rope in Melerine that would have alerted the Fontenots to tree climbing activity in the vicinity of the water wagon. Indeed, there was no testimony that the Fontenots even had knowledge of the presence of children in the wooded area of their property. Thus, we find that the Fontenots had no duty to move the water wagon orjgfence in their property since an injury of the type Christopher suffered was not readily foreseeable.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the plaintiffs.
AFFIRMED.

. Mr. Fontenot did not testify at trial. It was explained to the jury that Mr. Fontenot was hospitalized at the time of trial and was unavailable to testify.